(No. 32552.—

BLACHFORD KOUGH *et al.,* Appellees, *vs.* FRED K. HOEHLER, Director of the Department of Public Welfare, *et al.,* Appellants.

*Opinion filed November 20, 1952.*

410

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JOHN T. COBURN, and A. ZOLA GROVES, of counsel,) for appellants.

HARRY G. FINS, and CALVIN R. SUTKER, both of Chicago, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County denying the motion of the defendant, John S. Boyle, State's Attorney of Cook County, to dismiss the complaint and amendment thereto and allowing the motion of the plaintiffs to strike the answer of the defendant, Fred K. Hoehler, Director of the Department of Public Welfare of the State of Illinois, and permanently enjoining the defendants from enforcing against the plaintiffs the provisions of sections 19 to 25, inclusive, of article IX of the Mental Health Code of the State of Illinois, (Ill. Rev. Stat. 1951, chap. 91½, pars. 9-19 to 9-25,) this decree being based upon the conclusion by the court that the aforementioned sections of the Mental Health Code are unconstitutional. The appeal is brought directly to this court because the constitutionality of a statute and the public revenue are involved.

This case was decided upon the pleadings. There are no issues of fact. The pleadings are the plaintiffs' complaint, an amendment to that complaint, the motion of the defendant State officer to strike the complaint, a similar motion by the State's Attorney of Cook County, an answer filed by the Director of the Department of Public

Welfare after his motion to strike the complaint was overruled, together with certain exhibits attached thereto, and plaintiffs' motion to strike the Director's answer. The plaintiffs are spouses, parents or children, respectively, of patients in Illinois State hospitals who would be financially liable by virtue of article IX, sections 19 to 25, inclusive, of the Mental Health Code. The title of the act is as follows: "An Act to revise the law in relation to the commitment, admission, detention, care and treatment of mentally ill persons, mentally deficient persons and persons in need of mental treatment; to provide for the licensing and regulation of private institutions for the care of mentally ill persons, mentally deficient persons and persons in need of mental treatment; and to repeal certain Acts therein named."

The act is divided into seventeen articles, each article having one or more sections. Article IX contains sections 1 to 25, both inclusive, but the only parts of the act involved in this suit are the title and sections 19 to 25, both inclusive, of article IX. Section 19 provides that each patient in a State hospital, as well as his estate, is liable for the payment of maintenance charges for his care, treatment, detention and training, and that if he is unable to pay, or his estate is insufficient, his relatives then become liable in the following order: his spouse, his parent or parents, his child or children. Section 20 provides that the charge for such care, treatment, detention and training shall be fixed by the Department of Public Welfare at the average per capita cost of all the State hospitals for the mentally ill and mentally deficient for the fiscal year immediately preceding the period for which the rate is being calculated. This section also provides that smaller amounts may be accepted by the Department when conditions warrant such action or when offered by persons not liable. Section 21 gives the Department authority to investigate the financial condition of each person liable under the act

and to determine the ability of each such person to pay the maintenance charges, and for such purpose to set a standard as a basis of judgment of ability to pay, which standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors and to make provision for unusual and exceptional circumstances in the application of said standard. This section further provides that the Department may issue statements of sums as maintenance charges, and require the same to be paid monthly, quarterly, or at such other times as may be arranged, and that these charges shall not exceed the average per capita cost as determined under the act, but fees for transporting the patient to the institution may be added, as provided for in section 5-16 of the act. This section also provides that the admission or detention of a patient shall not be limited or conditioned in any manner by the financial status or ability to pay of the patient, his estate or relative. Records of the payments are to be kept confidential and the State hospital staff shall not be assigned duties in connection with the assessment and collection thereof. Section 22 provides that any person that has been issued a statement of sums due for maintenance charges may petition the Department for a release or modification and the Department shall grant him a hearing. After the hearing the Department may cancel or modify its former statement, and may at any time, for due cause, increase the sums due for maintenance charges, not, however, to exceed the average per capita cost as determined under the act. Section 23 authorizes suit to be brought in the county court against any person liable under the act for maintenance charges who fails or refuses to pay them, and in case more than one person is liable for the payment of charges for one patient the decision of the court may be based upon the proportionate ability of each defendant to contribute to the payment. This section also provides that orders for the payment of money may be enforced by

attachment as for contempt and that suits for such payments shall be governed by the provisions of the Civil Practice Act. Section 24 makes it the duty of the executor or administrator of the estate of one who has been a patient at a State hospital to ascertain from the Department whether any payments were made by the deceased for sums due as maintenance charges while he was a patient, and if not, the Department may present a claim for such sums, or for the balance due in the event a portion of the charges have been paid, and these claims shall be allowed and paid as other lawful claims against the estate. Section 25 provides that if any of the persons made liable by the act for the maintenance charges of a patient in a State hospital are unable to pay the same, then the cost of the care, treatment, detention and training of the patient shall be borne by the State, but the cost of clothing, transportation, and other incidental expenses, shall be defrayed by the patient, his estate, his spouse, his parent or parents, or his child or children.

It is first contended that sections 19 to 25, inclusive, of article IX of the Mental Health Code are unconstitutional because they are in conflict with section 13 of article IV of the constitution, which provides that "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." It is argued that there is nothing in the title of the Mental Health Code to suggest that the act itself contains any provisions pertaining to the financial liability of spouses, parents or children of any mentally ill person. Plaintiffs rely upon our holding in the recent case of *People* v. *Levin,* 412 Ill. 11, that section 18 of the act concerning trust receipts and security transactions is unconstitutional, but our holding in that case was based upon the ground that the penalty provision of section 18

was not germane to the subject expressed in the title and bore no relation to it. The purpose of the act was to define trust receipts and designate their use and to make uniform the law relating thereto. The title contained no reference to a penalty and the Uniform Trust Receipts Act did contain a penalty provision. Plaintiffs also rely upon the cases of *Johnson* v. *Daley,* 403 Ill. 338, *Heck* v. *Schupp,* 394 Ill. 296, *People* v. *Mahumed,* 381 Ill. 81, *People ex rel. Clarke* v. *Jarecki,* 363 Ill. 180, and *Milne* v. *People,* 224 Ill. 125, in each of which we held a statutory provision unconstitutional upon the ground that the subject matter thereof was not germane to the subject expressed in the title. These cases are distinguishable from the case now before us. There is a substantial difference between the acts involved in all those cases and the act involved in this case. We have held in numerous cases that it is sufficient if the title correctly gives the subject matter of the act explicitly and clearly, so as to inform the members of the General Assembly and the public of the subject dealt with and matters interrelated with the subject, even though some of the provisions of the bill may be diverse, if such provisions can make an effective and practical piece of legislation, (*Reif* v. *Barrett,* 355 Ill. 104,) and in the case of *Department of Public Works* v. *Chicago Title and Trust Co.* 408 Ill. 41, we held that the title is merely required to state the general purpose of the statute and that it need not contain all the details of the act or be an index to its contents. However, it is imperative that the provisions contained within an act be germane to the subject set forth in the title, such that if traced back they will lead the mind to the subject as the generic head, and that a common purpose be expressed by these various provisions tending to promote the single object expressed in the title. (*People* v. *Levin,* 412 Ill. 11.) In the instant case the title directs the reader's attention to the fact that the statute relates to the care of mental patients in State hospitals,

and provisions for meeting the costs of commitment, admission, detention, care and treatment of such patients and making charges therefor are certainly germane to the common purpose expressed in the title and would reasonably be expected to be contained therein.

The next argument of plaintiffs is that the challenged sections constitute arbitrary classifications in violation of the "equal protection of the laws" and "due process of law" guarantees of the fourteenth amendment to the constitution of the United States, and that they constitute legislation in violation of section 22 of article IV of the constitution. This argument is based upon the fact that the act excludes from its provisions mentally ill persons who are in custody on a criminal charge. Plaintiff takes the position that there is an analogy between that provision and section 23 of "An act to revise the law in relation to charities," which this court held unconstitutional in the case of *Board of Administration* v. *Miles,* 278 Ill. 174, 115 N.E. 841. The statute involved in the *Miles case* had the effect of declaring that if one died while an inmate of a State hospital his estate was liable for his support for the entire time he had been a patient in the hospital, whereas if he was discharged from the hospital prior to his death his estate was not liable for such charges. This was a clear discrimination in favor of those who were discharged from the hospital in their lifetime and we held that the circumstance of a patient's discharge, whether before or after death, bore no reasonable relation to the liability of the estate of the deceased for his support and treatment while in the hospital. We cannot agree with plaintiffs' reasoning that there is no valid basis for making a distinction between persons who are in the hospital merely for treatment and those who are imprisoned on account of some criminal charge or offense and who, if they were in physical and mental health, would be in the jails or penitentiaries. We think there is a clear basis for distinc-

tion. Inmates against whom there are no criminal charges, or who have been guilty of no criminal offenses, are in the hospital solely for treatment. Those who are charged with crime, or who have been convicted of crime, would ordinarily be in the jail or penitentiary, but on account of the fact that there are no facilities there for treating them for their physical and mental ills they are transferred to the hospitals. Moreover, the public is vitally and directly interested in those who are in custody. They are in custody initially for the protection of the public, when convicted or accused of a crime. They do not cease to be of intimate consideration to the public merely because they are, or become, insane, nor do they cease to be in custody for the same reason. Those patients in the State hospitals for the purpose of treatment alone are of direct and vital interest only to their relatives and friends. It is true that the public has an indirect moral interest in their care and well being, but they are of direct consideration only to their close friends and relatives. It was a valid exercise of the discretion vested in the legislature to make a distinction between criminal patients and those who are not criminal.

The plaintiffs complain that the charges are computed on the general average per capita cost of operation of all State hospitals, making no distinction between institutions or the care and treatment rendered the various types of patients. They therefore claim a lack of due process. Section 9-20 of the Mental Health Code constitutes a direction to the Department by the legislature concerning the method by which the charges shall be computed. Nothing herein reveals that the charges under this section are unreasonable or result in discrimination. It is purely a legislative function to direct the method whereby these charges may be determined, and presents no proper constitutional question.

The code makes no provision for allowing any credit for the labor of patients against the charges assessed. It

has been generally held that where a statute requires that the patient, his estate, or his relatives pay the cost of his maintenance in a State hospital and there is no express statutory provision for deducting the value of any labor performed by the patient, no deduction can be allowed. (*Porter* v. *Eastern Kentucky Asylum,* 121 Ky. 816; *Re Peterson,* 157 Ore. 696, 74 Pac. 2d 60.) Moreover, it would be difficult if not impossible to separate that labor which is of therapeutic value to the patient from that which is purely of value only in the operation and maintenance of the State hospital.

Plaintiffs' next argument is that section 9-21 is unconstitutional because it creates a graduated income tax, or, if it be treated as a property tax, because it is arbitrary and not uniform. A tax is a mode of raising revenue for the support of the government, and is regulated in amount by its necessities. (*People ex rel. Curren* v. *Schommer,* 392 Ill. 17.) The charges provided for by this act are not for the support of government, nor are they measured in amount by the public needs for public purposes. It is a charge for services rendered in the care, treatment, and maintenance of each such unfortunate patient in these State hospitals and cannot be a tax at all. (*Berryman* v. *Bowers,* 31 Ariz. 56; *Bon Homme County* v. *Berndt,* 15 S. Dak. 494.) Since these charges partake of a public charity, (rather than a governmental purpose,) the original cost of which is borne by the public, it is entirely proper and fitting that the patients, their estates and relatives, in so far as they are able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public. Plaintiffs seem to base their argument upon the fact that the regulations promulgated by the Department fix the amount to be paid by or for a patient in accordance with the financial ability of the patient, or his estate or near relatives, as the case may be, or upon their income. Since caring for these

patients is a work of charity, and they are not all in need of gratituous services to the same extent, it is entirely equitable and just that those who are able to pay should pay and that those who are not able to pay need not pay. It is likewise equitable and just that those who are able to pay a part of the costs of their support and treatment should pay what they reasonably can and let the remainder of the cost be borne by the public. We know of no fairer nor better way to carry out these principles than to fix the amount that each is to pay according to his income or financial ability, and to exempt entirely those whose income or financial ability is not sufficient to enable them to bear any part of the cost. The charge does not in any way partake of the nature of a tax. The distinction between this case and the cases cited by plaintiffs in support of their argument is that in those cases the amount of the charge bore no relation to the amount of the services rendered, whereas in the instant case the basis of the charge is the same in all cases, namely, the per capita cost, but the entire cost is not collected from all the patients if they are financially unable to pay it. This would seem to be a proper practice for a charitable or eleemosynary institution operated by the State.

Plaintiffs argue that the statute violates section 23 of article IX of the constitution because it allows the releasing and extinguishing of debts or obligations due the State. This is a misapprehension. There is no indebtedness created until the charge is fixed, and the statute itself provides the method of fixing the charges, the amount of which varies according to the conditions set forth in the statute. It is true that the regulations provide that a charge may be modified after a hearing upon a petition for that purpose. This would seem to indicate that if an error has been made in calculating the charge, either on account of misapprehension as to the patient's ability to pay, or for other reasons, this error may be corrected and the proper

charge made. Section 9-17 of the act gives the Department authority to prescribe and publish all needful rules and regulations, and it would appear that the regulations attached to the answer as exhibits are within the scope of the authority of the Department, but, if anyone is aggrieved by any such rule or regulation, he is given the right of review under the Administrative Review Act of this State, and even though any of such rules or regulations be found to be arbitrary or illegal such finding does not affect the constitutionality of the act. In the case of *In re Yturburru,* 134 Cal. 567, 66 Pac. 729, the Supreme Court of California sustained as constitutional an act imposing liability upon the estates of mentally ill patients able to pay for such care, but not imposing liability on those unable to pay, and in the case of *In Re Mansleys Estate,* 253 Pa. 522, 98 Atl. 702, the court sustained an act in which the legislature made a distinction which was based upon the economic exigencies of the patient.

It is finally argued that the challenged sections are unconstitutional because they vest in an administrative agency the power to determine whether the law shall or shall not be enforced against individuals in the same situation without proper limitations for the exercise of such discretion. The legislative power of the State is vested exclusively by the constitution in the General Assembly and may not be delegated. The legislature must decide what the law shall be, and a law must be complete in all its terms when it leaves the legislature. Any law which vests in the discretion of administrative officers the power to determine whether the law shall or shall not be enforced with reference to individuals in the same situation, without any rules or limitations for the exercise of such discretion, is unconstitutional. But while the legislature cannot divest itself of its proper function to determine what the law shall be, it may authorize others to do those things which it might properly do but cannot do understandingly or

advantageously. (*Welton* v. *Hamilton*, 344 Ill. 82.) It is the purely arbitrary power in an administrative officer to determine whether a law shall or shall not be enforced or executed, without any rules or provisions of law to control him, that renders a law unconstitutional. (*Board of Administration* v. *Miles*, 278 Ill. 174.) The power vested in the Department by the act here in question is not an arbitrary, unlimited discretion to enforce the law against some individuals and not others. The Department is specifically directed to investigate the "financial condition" and "ability to pay" of each person liable under this act. For this purpose the Department is first required to set a definite standard to be used as a basis of ability to pay in each instance. That standard is the same for all persons, at any specific time. However, the Department is directed to recompute that standard periodically to reflect changes in the cost of living and other pertinent factors. This is a function the legislature could conceivably and properly perform, but one which it could not understandingly or advantageously do. The recomputation would necessarily involve many factors more easily and capably compiled and applied by a smaller expert body, and would be a frequent process necessitating extra sessions of the General Assembly in order to perform the task by legislation. Moreover, the act sets forth in sufficient exactness the things to be considered by the Department in reaching its determinations. It sets forth just who shall be liable under the act and how the Department shall determine their liability. The act provides for an administrative hearing at the instance of any person affected or aggrieved by the administration of the act, and allows judicial review under the Administrative Review Act of any final decision of the Department. ( See *Sheldon* v. *Hoyne*, 261 Ill. 222.) The discretion allowed the Department is therefore far from arbitrary, being subject to all these limitations, rules, and provisions of law.

After a careful examination of sections 19 to 25 of article IX, inclusive, of the Mental Health Code, we are of the opinion that none of these sections are vulnerable to the constitutional objections advanced and that the superior court of Cook County erred in holding those sections of the statute unconstitutional and in enjoining their enforcement.

The decree of the superior court of Cook County is therefore reversed and the cause is remanded, with directions to vacate the decree heretofore entered and to dismiss plaintiffs' suit for want of equity.

*Reversed and remanded, with directions.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.