(No. 34924.—

THE DEPARTMENT OF PUBLIC WELFARE, Appellee, *vs.* EDWARD C. HAAS, Appellant.

*Opinion filed November 26, 1958.*

LEONARD KARLIN, of Chicago, (HARRY G. FINS, of counsel,) for appellant.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The Department of Public Welfare of the State of Illinois for the use of the People of the State of Illinois, plaintiff, brought an action in the county court of Cook County against the defendant, Edward C. Haas, to enforce payment of maintenance charges for defendant's son, Richard, an inmate of the Lincoln State School. The action was brought under the pertinent provisions of the Mental Health Code. (Ill. Rev. Stat. 1953, chap. 91½, pars. 9—19, 9—20, 9—21, 9—23.) After filing an appearance and demand for a jury trial, defendant answered, denying liability for payment of the charges and asserting that the act violated certain provisions of the State and Federal constitutions. After the plaintiff had answered written interrogatories propounded by defendant, it filed a motion for summary judgment supported by affidavit. Defendant's motion to strike was overruled and counteraffidavits were filed. The court allowed the motion for summary judgment and entered judgment against defendant in the sum of $2,040 and costs. Defendant appealed directly to this court asserting jurisdiction on the ground that the State

is interested as a party (*Illinois Public Aid Com.* v. *Massie,* 13 Ill.2d 498) and that the construction of certain provisions of the State and Federal constitutions is involved. (*Karas* v. *Snell,* 11 Ill.2d 233.) The jurisdiction of this court is properly invoked.

The complaint, filed December 23, 1954, prayed for the recovery of maintenance charges for defendant's son for the months of January, 1952, through October, 1954, at the rate of $60 per month. Plaintiff alleged in substance that the action was brought by the State's Attorney at the request of the Department of Public Welfare, herein called the Department; that Richard Haas had been adjudicated an incompetent person and since August 28, 1949, had been confined in Lincoln State Hospital under the control of the Department; that the incompetent was unable to pay maintenance charges and had no estate sufficient to defray them. After setting forth the pertinent provisions of the code providing for liability on the part of the spouse, parent or parents, child or children in case of inability of the patient or his estate to meet the charges, (Ill. Rev. Stat. 1953, chap. 91½, par. 9—19,) plaintiff alleged that the patient was unmarried; that defendant was his father; that the Department, pursuant to the code, (Ill. Rev. Stat. 1953, chap. 91½, pars. 9—20, 9—21,) had calculated and fixed the per capita cost of maintaining the patient at $60 per month; that pursuant to par. 9—21 the Department had submitted monthly statements to the defendant for the per capita costs; that defendant had failed, refused and neglected to pay them; and that the sum of $2,040 was due as evidenced by the attached itemized claim.

Defendant's answer admitted paternity, the adjudication of incompetency, and that Richard is unmarried and unable to pay. Defendant denied liability under the code and that the claim is for maintenance. As to the allegation that the Department had calculated and fixed the per capita cost, defendant denied "that the Department of Public

Welfare has properly calculated and fixed the per capita cost of maintenance to be Sixty Dollars per month and demands strict proof thereof." The answer did not deny that the Department submitted to defendant monthly statements for per capita costs pursuant to paragraph 9—21. The remainder of the answer challenged the constitutionality of the code on many grounds, most of which are not urged on this appeal.

The motion for summary judgment alleged that there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law, as appears from the pleadings, the interrogatories and answers thereto, and the certified copies of documents and affidavits attached. The motion noted the admissions of defendant's answer and that he failed to plead inability to pay. Certified copies of various duly adopted regulations of the Department were attached to the motion, including regulation No. 49 which established the per capita cost of maintaining patients in State institutions, and the affidavit of the superintendent of the Lincoln State School which recited that Richard Haas was committed as a patient to that school on June 24, 1948, and was still so confined on March 6, 1956.

Defendant's lengthy and argumentative counteraffidavit contained more allegations of conclusion than fact. So far as material, it stated that he lives in a rented apartment with his wife and another son, Stephen, 13 years of age; that he also supports his aged mother in a separate apartment; that he is employed at a salary, is in moderately poor health and "has no reserve of investment or savings"; that all of his family is entirely dependent upon his earnings; that "in keeping with his status as a professional person" his salary "leaves no surplus"; that his son, Richard, is described as mentally deficient, or feeble minded; that he was committed to the Lincoln State School because the State and city failed to provide "educational and training facilities for children of the type and who develop at the rate of develop-

ment" of his son; and that the latter was committed to "receive training and education suited to his needs and for his development" to the end that "he may become partially self-sufficient and a limited asset to the community." Included in defendant's affidavit is a verbose statement upon information and belief of matters which Dr. Otto G. Bettag, Director of the Department, might testify to if called as a witness. Many of the statements attributed to him are immaterial and the remainder are self-serving to the defendant and prejudicial to the plaintiff. Such statements lack the dignity of hearsay evidence and the trial court was warranted in ignoring them. In justification of the use of these supposititious statements, defendant alleged that Dr. Bettag was hostile, and that his affidavit was not available. However, the testimony of Dr. Bettag was available to the defendant under the applicable provisions of the Civil Practice Act.

Defendant first contends that the trial court lacked jurisdiction to hear the cause; that section 7 of the act to extend the jurisdiction of county courts provides that such courts shall have concurrent jurisdiction with circuit courts "in all that class of cases wherein justices of the peace now have or may hereafter have jurisdiction, where the amount claimed or the value of the property in controversy shall not exceed two thousand dollars ($2,000)" (Ill. Rev. Stat. 1953, chap. 37, par. 177); and that since the sum demanded was in excess of $2,000 the court lacked jurisdiction. Plaintiff asserts that the court has jurisdiction under the provisions of section 9—23 of the Mental Health Code, (Ill. Rev. Stat. 1953, chap. 91½, par. 9—23,) which provides that the State's Attorney of the county in which a person resides who is liable under the code for payment of maintenance charges, shall file suit in the county court against such person or persons who fail or refuse to pay such charges and the court may enter an order for the payment thereof. Defendant urges that the code cannot confer

jurisdiction upon the county court to hear and determine claims for maintenance charges in excess of $2,000; and that if given such effect, the code violates the provisions of section 18, article VI of the Illinois constitution, which, so far as applicable here, provides that county courts "shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Defendant also urges that section 9—23 of the code is not a general law, but rather a special law, since it is limited in purpose to the collection of maintenance charges and may be used only by the department as plaintiff.

Section 22 of article IV of the Illinois constitution, after prohibiting the passage of local or special laws in specifically enumerated instances, provides that "In all other cases where a general law can be made applicable, no special law shall be enacted." Presumably the framers of our constitution had in mind the distinction between general and special legislation when they provided in section 18 of article VI that county courts shall have "such other jurisdiction as may be provided for by general law." Therefore, cases decided with reference to the provisions of section 22 of article IV are applicable here.

In *People* v. *Vickroy*, 266 Ill. 384, at pages 387 and 388 we stated: "A general law is one framed in general terms and restricted to no locality, operating equally upon all of a group of objects which, having regard to the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves." A law may be general though it does not embrace all of the governed and may properly be said to be general, not because it applies to every person in the State, but because it may, from its terms, when many are

embraced in its provisions, include all others when they occupy a like position. (*Kloss* v. *Suburban Cook Co. Tuberculosis Sanitarium,* 404 Ill. 87; *People* v. *Vickroy,* 266 Ill. 384; *Arms* v. *Ayer,* 192 Ill. 601.) Tested by these principles, section 9—23 is a general law. Though it is limited in purpose to providing means for the collection of sums due for maintenance charges under the code and embraces only those who may be, from time to time, liable therefor, it does, by its terms, embrace all others whenever they shall occupy a like situation. The fact that the Department is designated as the agency to institute proceedings does not make it a special law. The real parties in interest are the People of the State of Illniois and the action is brought in their behalf. Thus, so far as the plaintiff is concerned, the act reaches the maximum in the breadth and generality of its scope.

The constitution is a restriction on the power of the legislature and without such circumscription the power of the legislature is unlimited. In considering the provisions of section 18 of article VI of the constitution which grants to county courts "such other jurisdiction as may be provided for by general law," we heretofore used the following language which is most appropriate in the case at bar: "Here there is not only no limitation on the power of the legislature to confer new jurisdiction on the county courts but there is an express authorization so to do, subject only to the requirement that it be given by general law." (*People* v. *White,* 334 Ill. 465, 477.) Thus, "This grant is liberal enough, on the face of it, * * * to extend the jurisdiction of county courts to almost any subject." (*People ex rel. Grinnell* v. *Hoffman,* 116 Ill. 587, 601.) In exercising its authority under the constitution the legislature has, by various acts, extended the jurisdiction of county courts to such matters as the removal of county seats, contests of elections, supervision of insolvent debtors, adoption of children, trial of rights of property, the formation of drain-

age, park, fire protection and mosquito abatement districts and cities and villages, the appointment of miner's examining boards, and the appointment of the governing members of various authorities, commissions, and districts. Acts conferring such powers have been sustained by this court. (Cf. *People* v. *White,* 334 Ill. 465, 482 and 483 and cases cited.) Under the broad language of the constitution, the legislature had the authority to invest county courts with jurisdiction over the collection of maintenance charges under the Mental Health Code. It exercised that authority by adopting section 9—23 of the code. Thereunder the county court may adjudicate such claims, without limit as to the amount sought to be recovered or ordered paid. Such jurisdiction is separate from and in addition to that conferred by section 7 of the act to extend the jurisdiction of county courts, (Ill. Rev. Stat. 1953, chap. 37, par. 177,) and the $2,000 limitation there imposed has no application to the proceedings authorized under section 9—23 of the code.

Defendant argues that the provisions of the code imposing maintenance charges have the effect of charging him individually with the responsibility of providing for his son's common school education and thereby violate section 1 of article VIII of the Illinois constitution which provides: "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this state may receive a good common school education." In support of his position, defendant contends, first, that the constitutional mandate embraces mentally deficient children as well as those of normal intelligence, and, second, that the institution at Lincoln is not a hospital but a school and, as such, is part of the common school system. Defendant cites *People ex rel. Leighty* v. *Young,* 309 Ill. 27, and *People* v. *Moore,* 240 Ill. 408. These cases hold that the constitution requires that the school system and schools provided thereunder shall be free to all children of the State for the pur-

pose of providing a good common school education, and that the legislature has the power to determine what shall constitute such education. While this constitutional guarantee applies to all children in the State, it cannot assure that all children are educable. The term "common school education" implies the capacity, as well as the right, to receive the common training, otherwise the educational process cannot function. Defendant has admitted that his son was properly adjudicated incompetent and that the boy is described as "mentally deficient or feeble minded." Existing legislation does not require the State to provide a free educational program, as a part of the common school system, for the feeble minded or mentally deficient children who, because of limited intelligence, are unable to receive a good common school education. Under the circumstances, this constitutional mandate has no application.

Though named the "Lincoln State School, " it is one of the State's charitable institutions and a hospital by definition. (Ill. Rev. Stat. 1957, chap. 23, par. 2; and chap. 91½, par. 1—5.) In his answer, defendant admits this fact and that the school embraces within its objects the promotion of the intellectual, moral and physical culture of the classes involved, to "fit them, as far as possible, for earning their own livelihood and for future usefulness in society." (Ill. Rev. Stat. 1957, chap. 23, par. 1202, formerly par. 42.) The legislature, with justification, has clearly indicated that the mentally deficient are objects of charity and entitled to special treatment in institutions such as Lincoln. This care is provided regardless of the ability of family or relatives to assist. (Ill. Rev. Stat. 1957, chap. 91½, par. 9—21.) The fulfillment of this purpose has no relation whatever to the obligation to provide a system of free common schools and the institution at Lincoln is not a part of the common school system of this State.

Defendant further urges that the provisions of section 9—20 of the code which direct that three fourths of the

amounts received from the collection of maintenance charges shall be deposited with the State Treasurer and placed in the Mental Health Fund and that the balance, not exceeding the sum of one million dollars per fiscal year, shall be retained by the Treasurer, *ex officio*, as trustee, in a Psychiatric Training and Research Fund outside the State treasury and shall be expended for the training of psychiatric personnel and for research in mental illness or mental deficiency by the Psychiatric Training and Research Authority, violates section 13 of article II of the Illinois constitution which proscribes the taking of private property for public use and the due process provisions of section 2 of article II of the Illinois constitution and the 14th amendment of the constitution of the United States. This section limits the overall amount in this fund to $2,000,000 and provides that whenever it exceeds that amount the excess shall be restored to the Mental Health Fund and whenever the amount retained in any one year in the training and research fund shall equal $1,000,000 all amounts collected thereafter for the remainder of the year shall be deposited with the Treasurer and paid into the Mental Health Fund. (Ill. Rev. Stat. 1957, chap. 91½, par. 9—20.) Defendant contends that since the amounts compulsorily paid by relatives for care and maintenance are not used for the maintenance, care, training or detention of the mentally deficient at Lincoln, but are used rather for the building and maintaining of a psychiatric training school in Chicago and for subsidizing students in psychiatry, private property is taken for public use without compensation in violation of the constitutional provisions, it being "grossly improper to cast upon a select group the burden of paying for such general public benefits."

In *Kough* v. *Hoehler*, 413 Ill. 409, this court held that the imposition of maintenance charges under the code, as provided in section 9—19 through 9—25 was a constitutional exercise of legislative power as against the conten-

tions that the act denied equal protection of the law, was violative of due process and constituted special legislation. At the time the *Kough case* was decided, section 9—20 provided that the amounts received from the collection of maintenance charges should be deposited with the State Treasurer and placed in the Mental Health Fund. (Ill. Rev. Stat. 1951, chap. 91½, par. 9—20.) Defendant takes the position that the *Kough case* has no application here due to the changes subsequently made in section 9—20 providing for the psychiatric training and research fund and the deposit of a portion of the maintenance charges therein. He observes that formerly the section did not designate how the Mental Health Fund was to be used. However, the *Kough* decision was not based upon the specific use to which the fund would be devoted when collected. It was there observed that the charges partake of a public charity, the original cost of which was to be borne by the public, but that it was entirely proper that the patients, their estates and relatives, insofar as they were able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public. (*Kough* v. *Hoehler,* 413 Ill. 409, 418.) Thus, the imposition of maintenance charges is lawful, and the funds collected become public funds to be used by the legislature for such public purposes as it may determine. (*Michaels* v. *Barrett,* 355 Ill. 175.) The fact that the legislature may provide that amounts, when collected, shall be placed in a certain fund does not ordinarily preclude a later General Assembly from ordering it paid into another fund or from abolishing the fund altogether. (*People ex rel. City of Chicago* v. *Barrett,* 373 Ill. 393.) For example, it is lawful to divert motor fuel tax funds for emergency relief purposes. (*Michaels* v. *Barrett,* 355 Ill. 175.) While the constitution permits the diversion of funds for public purposes, the legislature in the instant case has not diverted the fund from its generic purpose. Its action was within its constitutional authority.

Finally, defendant contends that the trial court erred in entering summary judgment on the pleadings because there were triable issues of fact upon which defendant should have been afforded a jury trial as he demanded. The alleged issue of fact is defendant's ability to pay the sums demanded. He urges that his affidavit demonstrated his inability to pay; that the facts therein stated are not denied and therefore stand admitted; and that it was incumbent upon the plaintiff to allege and prove defendant's ability to pay, at least to the extent of showing that defendant's gross income was in excess of $249 per month, since the department's regulation No. 53 provides that a family having a gross income of not more than that amount is not liable for the payment of maintenance charges.

In the first place, there is nothing in defendant's answer which raises the question of his ability to pay. No facts are pleaded which show, directly or indirectly, that defendant denies liability for that reason. The substance of his affidavit has been indicated, which includes statements that defendant "has no reserve of investment or savings" and that "in keeping with my status as a professional person my salary leaves no surplus." Even if admitted, these statements fall far short of establishing defendant's inability to pay the monthly charge as fixed and determined by the Department. As a matter of law, defendant's pleadings do not deny his ability to pay.

More important, however, is defendant's fundamental misconception of the scope and purpose of the proceedings brought in the county court under section 9—23 of the code. Section 9—19 provides that each patient as well as his estate is liable for the payment of maintenance charges and imposes an obligation on certain relatives, in the order named, if the patient is unable to pay or his estate is insufficient. Section 9—20 provides that the charge shall be fixed by the Department at the average per capita cost of all State hospitals for the mentally ill and mentally deficient for the

fiscal year preceding the period for which the rate is being calculated. Section 9—21 authorizes the Department to investigate the financial condition of each person liable under the act and to determine the ability of each person to pay the charges, and for such purpose to set a standard as a basis of judgment of ability to pay, which standard shall be recomputed periodically to reflect changes in cost of living and other pertinent factors. The section then provides that the Department may issue to persons liable under the act, statements of sums due as maintenance charges and require their payment monthly, quarterly or at such other times as may be arranged; that the charges shall not exceed the average per capita costs; and that the admission or detention of a patient shall not be limited or conditioned by his financial status or ability to pay. Section 9—22 provides that any person who has been issued a statement for such charges may petition the Department for a release from or modification of such statement, and the Department shall provide for hearings to be held upon any such petition; and that after the hearing the Department may cancel or modify its former statement and may, at any time, for due cause, increase the sums due for maintenance charges, but not in excess of the average per capita cost. Section 9—23 authorizes suit to be brought in the county court against any person liable for charges who fails or refuses to pay them and in case more than one person is liable the decision of the court may be based upon the proportionate ability of each defendant to contribute to the payment of such charges. Section 11—1 provides that any person affected by a final administrative decision of the Department may have the decision reviewed only under and in accordance with the provisions of the Administrative Review Act. Ill. Rev. Stat. 1957, chap. 91½, par. 11—1.

An examination of these provisions of the code indicates that an action brought under section 9—23 is only for the

enforcement of unreleased charges as established in conformity with its preceding sections. No action thereunder is contemplated until the defendant has exhausted his administrative remedies or the allotted time has expired within which he can pursue them. Conversely, where a defendant has failed to pursue those remedies, he cannot raise in the county court questions which should have been raised in the administrative proceedings, such as the propriety of the amount of the charges as fixed and determined or his ability to pay. This construction is in accord with judicial precedent which has sustained the validity of legislation whereby the existence of liability or the validity of a regulation is determined by one process and enforcement is achieved by a separate proceeding. *Yakus* v. *United States,* 321 U.S. 414, 444, 88 L. ed 834; *Department of Finance* v. *Kilbane,* 381 Ill. 117, 119; *Department of Finance* v. *Gold,* 369 Ill. 497, 504.

When statements are received from the Department pursuant to section 9—21, it is the right and duty of the party affected to pursue the remedies provided under section 9—22 if he contends that the charge is improperly determined, excessive in amount, or not in reasonable relation to his financial ability. It is reasonable to believe that the legislature neither intended two independent and repetitious procedures to achieve the same result, nor contemplated that the Department should make an administrative determination of liability upon investigation and that, after hearing, if requested, and administrative review in the courts, if desired, such determination would thereafter be entirely disregarded by permitting a retrial of the same issues in an action in the county court under section 9—23. Such interpretation of the law would be inconsistent with the orderly administration of justice. In the case at bar, the defendant, against whom liability was sought, was given notice, afforded an opportunity to defend, as well as judicial review of the administrative determination. This consti-

tuted due process of law. The constitutional guaranty of due process does not require that such test be made in one tribunal rather than another.

Defendant calls attention to the fact that the complaint fails to allege that an administrative hearing was held or a final order entered thereafter. He says the complaint was thereby insufficient and a summary judgment improper under the circumstances. This argument is based upon a misapprehension of the nature and purpose of the proceedings. The complaint alleges that the Department, pursuant to sections 9—20 and 9—21, had calculated and fixed the per capita cost of maintaining the patient at $60 per month; that pursuant to section 9—21 monthly statements had been submitted to defendant who failed and refused to pay the charges. Defendant denied only that the Department had "properly fixed" the charges. The calculation and fixing of charges under section 9—20 and 9—21 is an administrative determination under the code. When statements are received pursuant to section 9—21, the party affected is notified of that determination. Thereafter he is entitled to petition for release from or modification of such charges under section 9—22, and to a hearing as provided therein. If he fails to pursue these remedies, the administrative determination, based on an investigation of financial ability, becomes final and conclusive of the issues involved. No hearing upon the administrative decision is contemplated unless demanded, and the opportunity afforded for such a hearing with a review thereof fully protects the rights of the defendant.

The complaint contained all the allegations necessary to an action brought under section 9—23. Defendant did not deny its material allegations. If either a hearing had been demanded, or an administrative determination made and a review thereof pending, defendant should have asserted such facts. Under the pleadings no legitimate issue of fact was presented. The proceedings under section 9—23 are

governed by the Civil Practice Act, (Ill. Rev. Stat. 1953, chap. 91½, par. 9—23,) and the entry of a summary judgment was proper.

The judgment of the county court of Cook County is affirmed.

*Judgment affirmed.*