In the Matter of the Estate of Nick Onischuk, Incompetent.
The Department of Mental Health of the State of Illinois,
Petitioner-Appellee, v. Samuel Nineberg and Sam
Onischuk, as Co-conservators of the Estate of Nick
Onischuk, an Incompetent, Respondents-Appellants.

Gen. No. 51,895.

First District, First Division.

October 30, 1967.

Arthur S. Gomberg, of Chicago (Samuel Nineberg, of counsel), for appellants.

William G. Clark, Attorney General of the State of Illinois, of Chicago (Richard A. Michael and Philip J.

Rock, Assistant Attorneys General, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a statutory proceeding for treatment charges brought under the Mental Health Code of 1963, against the estate of Nick Onischuk, an incompetent. (Ill Rev Stats 1965, c 91½, §§ 12–21, 12–22 and 12–23.)

The conservators appeal from an order of the Probate Division of the Circuit Court of Cook County, entered on March 16, 1966, directing them to pay to the Department of Mental Health, out of the assets of the estate of the incompetent, for the care and maintenance of the incompetent, (1) for past due maintenance, $2,778 for the period from January 1, 1952, through November 30, 1964; and (2) "the further monthly per capita charge as determined by the Department of Mental Health, State of Illinois, for maintenance of the said Incompetent in Manteno State Hospital until the assets of Nick Onischuk, Incompetent herein, have been depleted to a sum of not more than $500.00, or until said Incompetent is discharged from Manteno State Hospital, or until the further Order of this Court."

The facts are not in dispute. The third current account (1954) showed assets in excess of $15,000 held on restricted deposit. There were no expenditures since 1954. The petition of the Department of Mental Health showed a credit to the incompetent of $8,952, representing social security benefits turned over intact to the Department. The treatment charge since January 1, 1964, has been $132 per month, against which has been credited monthly social security benefits of $81.

The conservators filed an answer to the petition of the Department, in which they allege "that the calculations of petitioner are erroneous, and that there is no audit or

proper basis for the computations set forth . . . ." They also deny that they received monthly statements.

It is the theory of the conservators that "the monthly sums of $81.00 received by the Department of Mental Health from the Incompetent's Social Security benefits adequately compensate the Department for his maintenance costs at Manteno; that in any event the Conservators were never given a statement showing what these maintenance costs are."

The conservators argue, "If Nick Onischuk is compelled to pay a per capita tax which includes a computation of the cost of maintaining indigent patients, then the State has now shifted its burden for the maintenance of these indigent patients to Nick Onischuk and others in similar situations." The conservators maintain that it would be "more equitable if the agency or hospital would give the statement the Act intended, namely a statement of the cost of maintenance of the individual inmate, and then require payment of this actual cost. To require otherwise would be to compel our incompetent to pay part of the cost of maintaining other inmates who have no estate or who have no method of paying for their maintenance."

The Department asserts that sections 12–21 to 12–27 of the Mental Health Act (Ill Rev Stats 1965, c 91½) authorize the Department of Mental Health to establish an average per capita cost of maintaining a patient in a state mental institution and further provide for means and methods of collecting the per capita cost from the incompetent's estate or from close relatives. The Department submits that the average per capita cost calculation under section 12–22 is not unreasonable, discriminatory or a denial of due process (Kough v. Hoehler, 413 Ill 409, 109 NE2d 177 (1952)), and "that decision further stated that it is proper that the estate of a patient should reimburse the State for so much of the expense

of his care as possible thereby lessening the burden upon the public."

As we understand the contention of the conservators, it is that the "general average per capita cost of operation of all state hospitals for the mentally ill" (section 12–22— Rates) is so calculated as to place the entire cost of the operation of the state hospitals for the mentally ill on the financially responsible patients or relatives, with no part being assumed by the State for those unable to pay.

We find no merit in this contention. In Kough v. Hoehler, 413 Ill 409, 109 NE2d 177, it is said (p 417):

> "The plaintiffs complain that the charges are computed on the general average per capita cost of operation of all State hospitals, making no distinction between institutions or the care and treatment rendered the various types of patients. They therefore claim a lack of due process. Section 9–20 [now 12–22] of the Mental Health Code constitutes a direction to the Department by the legislature concerning the method by which the charges shall be computed. Nothing herein reveals that the charges under this section are unreasonable or result in discrimination. It is purely a legislative function to direct the method whereby these charges may be determined, and presents no proper constitutional question."

At p 418:

> "Since these charges partake of a public charity, (rather than a governmental purpose,) the original cost of which is borne by the public, it is entirely proper and fitting that the patients, their estates and relatives, in so far as they are able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public. Plaintiffs seem to base their argument upon the fact that the regulations promulgated

by the Department fix the amount to be paid by or for a patient in accordance with the financial ability of the patient, or his estate or near relatives, as the case may be, or upon their income. Since caring for these patients is a work of charity, and they are not all in need of gratuitous services to the same extent, it is entirely equitable and just that those who are able to pay should pay and that those who are not able to pay need not pay."

At p 419:

"We know of no fairer nor better way to carry out these principles than to fix the amount that each is to pay according to his income or financial ability, and to exempt entirely those whose income or financial ability is not sufficient to enable them to bear any part of the cost. The charge does not in any way partake of the nature of a tax. The distinction between this case and the cases cited by plaintiffs in support of their argument is that in those cases the amount of the charge bore no relation to the amount of the services rendered, *whereas in the instant case the basis of the charge is the same in all cases, namely, the per capita cost,* but the entire cost is not collected from all the patients if they are financially unable to pay it. This would seem to be a proper practice for a charitable or eleemosynary institution operated by the State." (Italics added.)

It is also said (p 421):

"The power vested in the Department by the act here in question is not an arbitrary, unlimited discretion to enforce the law against some individuals and not others. The Department is specifically directed to investigate the 'financial condition' and 'ability to pay' of each person liable under this act.

401

For this purpose the Department is first required to set a definite standard to be used as a basis of ability to pay in each instance. That standard is the same for all persons, at any specific time. However, the Department is directed to recompute that standard periodically to reflect changes in the cost of living and other pertinent factors. . . . The act provides for an administrative hearing at the instance of any person affected or aggrieved by the administration of the act, and allows judicial review under the Administrative Review Act of any final decision of the Department. . . . The discretion allowed the Department is therefore far from arbitrary, being subject to all these limitations, rules, and provisions of law."

In Department of Public Welfare v. Haas, 15 Ill2d 204, 154 NE2d 265 (1958), the Supreme Court reviewed at length the sections of the Mental Health Act which deal with the maintenance charges for an incompetent and their collection, and said (p 217) :

"An examination of these provisions of the code indicates that an action brought under section 9–23 [now 12–25] is only for the enforcement of unreleased charges as established in conformity with its preceding sections. No action thereunder is contemplated until the defendant has exhausted his administrative remedies or the allotted time has expired within which he can pursue them. Conversely, where a defendant has failed to pursue those remedies, he cannot raise in the county court questions which should have been raised in the administrative proceedings, *such as the propriety of the amount of the charges as fixed and determined or his ability to pay.* This construction is in accord with judicial precedent which has sustained the validity of legislation whereby the existence of liability or the va-

402

lidity of a regulation is determined by one process and enforcement is achieved by a separate proceeding. . . . (Italics added.)

"When statements are received from the Department pursuant to section 9–21 [now 12–23], it is the right and duty of the party affected to pursue the remedies provided under section 9–22 [now 12–24] if he contends that the charge is improperly determined, excessive in amount, or not in reasonable relation to his financial ability."

The conservators excuse their failure to follow the administrative remedy for the "release or modification of statement of sums due" (section 12–24) on the ground that they did not receive from the Department statements for the charges assessed against the incompetent by the Department. They argue, "how can we seek a release or modification of a statement unless and until we have received the same," and that "this failure to provide a 'statement' or a 're-computation' when a drastic increase from $81.00 per month to $132.00 per month was affected constituted an attempt to take property without due process of law." While the record is unclear on this contention, we note that during oral argument it was conceded by the conservators that some statements had been received from the Department, but they were unsure as to what these statements reflected.

The Department asserts that its petition affirmatively alleged that it submitted monthly statements for the cost of treatment of the incompetent to the conservators of his estate, and that this allegation "was denied by respondents and the lower court made no specific factual finding on this issue. However, petitioner submits that even if, assuming arguendo, no statements were submitted, by operation of law under the provisions of the Mental Health Code, a liability for maintenance attaches from the effective date of the Act or from the admission

of the patient whichever occurs later and no formal billing of charges is necessary."

On this point we agree with the Department that the liability for treatment charges under the provisions of the Mental Health Code attaches "either from the effective date of the act or from the admission of the patient, whichever occurs later." (Department of Public Welfare v. A'Hern, 14 Ill2d 575, 153 NE2d 22 (1958).) No "statement of amount due as treatment charges" is required to be issued to create the liability for the payment of sums representing treatment charges of an incompetent or for "actions for the recovery of treatment charges."

We conclude that the conservators have failed to demonstrate in this record that the per capita charge for all patients is entirely borne by the financially able patients or relatives, without any part of the per capita charge being assumed by the State for the maintenance of indigent patients.

As the statutory method of calculation by the Department of "the average per capita cost of the treatment of all such patients" has been approved by our Supreme Court in a number of cases, such as Kough v. Hoehler, 413 Ill 409, 109 NE2d 177, and Department of Public Welfare v. Haas, 15 Ill2d 204, 154 NE2d 265 (1958), the order of the Circuit Court is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.