In the Estate of Fred W. Schneider, an Incompetent. Department of Mental Health, State of Illinois, Petitioner-Appellee, v. Ruth A. Taylor, as Conservator of the Estate of Fred W. Schneider, an Incompetent, Respondent-Appellant.

Gen. No. 54,132.

First District, Fourth Division.

October 30, 1970.

Alphonse Cerza and Anthony J. De Tolve, of Chicago, for appellant.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe, Assistant Attorney

General, Frank J. McGarr, First Assistant Attorney General, and Jerome F. Goldberg and Joan M. Matlaw, Special Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This appeal is from an order of the Circuit Court directing the Conservator of the Estate of Fred W. Schneider to pay to the Department of Mental Health the sum of $6,807.50 for care and maintenance of the incompetent in the Kankakee State Hospital from November 19, 1963 through April 30, 1968, and $132 per month thereafter.

The facts are not in dispute. Schneider was indicted for the murder of his wife, but was found incompetent to stand trial (after a hearing pursuant to Ill Rev Stats 1963, c 38, § 104–1, et seq.), and was committed to the custody of the Department of Mental Health, which placed him in the Kankakee State Hospital on November 19, 1963. Ruth Taylor was appointed conservator of his estate. On December 28, 1965, Schneider was discharged from the hospital, but was recommitted on February 4, 1966, after again being found incompetent to stand trial.

The Department relies on the part of the Mental Health Code which provides that patients receiving treatment in the Department's mental health program, and the estates of such persons are liable for the payment of charges for the treatment. Ill Rev Stats 1967, c 91½, § 12–12. During the period of Schneider's first commitment, however, the Department's rules for the determination and collection of such charges did not apply to patients committed to its care under the circumstances of the instant case. On January 1, 1966, its rules were amended to extend charges for treatment to those patients also. It is on the basis of this statute and rule that the Department, on June 3, 1966, sent Schneider's conservator a notice that as of February 4, 1966 (the date of his second commitment), it had determined his estate to be liable for payments of $132 per month. Objecting to this determination, the conservator filed a petition for review. The Department held an informal

hearing on November 29, 1967, after which it filed a petition in the Circuit Court to enforce payment. This petition sought payment not only for the period of Schneider's second commitment (during which its amended rules were in effect), but also for the period of his prior commitment. The Circuit Court granted the petition in its entirety. The conservator appealed to the Supreme Court which found that it lacked jurisdiction on direct appeal and transferred the case to this court.

The question presented is whether the Department has authority to charge a person or his estate for his hospital care when he has been charged with a felony but is committed to the Department on a finding that he is incompetent to stand trial.

At common law and by statute in Illinois, a prisoner is not liable for his maintenance and medical care. Ill Rev Stats 1967, c 75, § 19, provides:

> The warden of the jail shall furnish necessary bedding, clothing, fuel and medical aid for all prisoners under his charge . . . .

In County of La Salle v. Milligan, 143 Ill 321, 334, 32 NE 196, the court held that the sheriff, as warden of the county jail, was required to furnish all necessary medical aid to the prisoners, and that the county was liable for those expenses. This basic rule was reaffirmed in Silver Cross Hospital v. Boyden, 351 Ill App 283, 286–88, 114 NE2d 898, although the county was held free from liability on the narrow ground that the prisoner's medical treatment had been arranged by him with his personal physician.

The Department takes the position that the general rule of a prisoner's nonliability for his own care and maintenance is not applicable to a person not yet convicted of the felony with which he has been charged. While, of course, there is a difference for some purposes between persons in custody charged with a felony and persons in custody after conviction, this difference is not a distinction which should require two rules of liability for hospital care. In both cases, the person is being held in custody not primarily for his own benefit

but for the benefit and protection of the public. It is true that the competency hearing itself, as the Department contends, is conducted in order to protect the accused from being tried while incompetent. People v. Bender, 20 Ill2d 45, 48, 169 NE2d 328. Nevertheless, when, as in this case, the accused is found incompetent to stand trial, and is committed to the Department, that commitment is primarily in the interest of the public welfare. This point was made clear in Kough v. Hoehler, 413 Ill 409, 109 NE2d 177. There, the parties and the court apparently assumed that the estate of an incompetent charged with crime could not be billed for treatment. Parties not charged with crime contended that it was illegal for them to be required to pay when persons charged with crime were not required to do so; that such an arbitrary classification was unconstitutional. The court held this to be a valid distinction, however, and said at pages 416–417:

> This argument is based upon the fact that the act excludes from its provisions mentally ill persons who are in custody on a criminal charge. . . . Those who are charged with crime, or who have been convicted of crime, would ordinarily be in the jail or penitentiary, but on account of the fact that there are no facilities there for treating them for their physical and mental ills they are transferred to the hospitals. Moreover, the public is vitally and directly interested in those who are in custody. They are in custody initially for the protection of the public, when convicted or accused of a crime. They do not cease to be of intimate consideration to the public merely because they are, or become, insane, nor do they cease to be in custody for the same reason.

A consideration of the statute which governs the commitment of incompetent accuseds reinforces this conclusion. Ill Rev Stats 1967, c 38, § 104–1, et seq. Section 104–3(a) provides that a person found incompetent shall be committed to the Department "during the continuance of that condition." And section 104–3(b) states that if a person is found competent after his commitment, the

suspended criminal proceedings pending against him "shall be resumed." In addition (by section 104–3(c)), the duration of his commitment is credited to him against any sentence he may receive. In this respect, the period during which an accused incompetent is in the custody of the Department is analogous to the confinement in jail of an accused person awaiting trial. Ill Rev Stats 1967, c 38, § 119–3.

The Department contends that it has the authority, under the Mental Health Code, to charge all patients committed to its care, irrespective of the procedural route of such commitment. In support of this position, it relies on Ill Rev Stats 1967, c 91½, § 12–12, which states:

> Each patient receiving treatment in a mental health program of the Department, and the estate of such patient, is liable for the payment of sums representing charges for treatment of such patient at a rate to be determined by the Department in accordance with this Section.

Broad as is the language of this section, we think it is not applicable to the facts of this case when consideration is given to the other statutory provisions and decisions above cited, and in the light of what we believe to be the basic jurisdiction clause of the Mental Health Code itself. We refer to section 2–1 (Ill Rev Stats 1967, c 91½, § 2–1) which provides in pertinent part:

> The circuit courts have jurisdiction under this Act over persons *not charged with a felony* * who are in need of mental treatment or are mentally retarded. (Emphasis supplied.)

Other sections of the Mental Health Code appear on their face to indicate that the Code cannot have been intended to apply to persons charged with a felony. Examples are section 10–4, giving a hospital superintendent the authority to release patients temporarily or grant their absolute discharge; and section 11–1, which deals

---

* In 1967, the word "felony" was substituted for the word "crime," which had been used in the Code from its first enactment in 1951.

with the transfer of patients to hospitals of the United States Veterans Administration.

It is also significant, we believe, that it is in a statute other than the Mental Health Code that we find expression of the Department's power, duty and responsibility to maintain and operate the Illinois Security Hospital for the confinement of persons who are charged with crimes but have been adjudged insane. Such persons are to be kept confined in that institution unless, in the judgment of the Department, they can, without danger to the public, be transferred to another State institution for the mentally ill. Ill Rev Stats 1967, c 91½, § 100–14.

■ We conclude that the Mental Health Code, and specifically § 12–12 thereof, is inapplicable to persons "charged with a felony."

■ The Department, however, points to the language of section 100–14 (c), supra, relating to the powers and duties of the Department concerning the Illinois Security Hospital as a source of authority outside of the Mental Health Code to charge accused incompetents for their treatment. That section states in part:

> . . . the Department, except where otherwise provided by law, shall, with respect to the management, conduct and control of the Illinois Security Hospital and the discipline, custody and treatment of the persons confined therein, have and exercise the same rights and powers as are vested by law in the Department with respect to any and all of the State institutions for the mentally ill . . . ."

This cannot, however, be read to extend the right of the Department of charge patients for their care under section 12–12 of the Code to patients charged with a felony, since these patients are specifically exempted from the Code by its own terms. This specific exemption is what the clause in section 100–14 (c), "except where otherwise provided by law," could have been intended to refer to.

The Department also argues for its position in this case on the strength of the application of the Mental Health Code to a person charged with a crime who is found not

446

guilty by reason of insanity and still insane. This can be of no assistance to the Department, however, since the pertinent statute (Ill Rev Stats 1967, c 38, § 118-2 (a)) specifically provides that the detention, care, treatment and discharge of such a person "shall be governed by the provisions of (the Mental Health Code)."

[4] Since no statute abrogates the common-law rule or supersedes the statutory requirement that a person in custody charged with or convicted of a crime be furnished necessary medical treatment, without cost to him, the Department of Mental Health cannot charge an accused incompetent's estate for his treatment.

In view of our decision, we need not consider appellant's alternate contention that the Circuit Court erred in ordering payment for the period of first confinement.

The order of the Circuit Court is reversed.

Reversed.

STAMOS, P. J. and DRUCKER, J., concur.