(No. 34832.—

THE DEPARTMENT OF PUBLIC WELFARE, Appellant, *vs.*
LEO A'HERN, Conservator, Appellee.

*Opinion filed September 18, 1958.*

LATHAM CASTLE, Attorney General, of Springfield,
(MADALYN MAXWELL, and MURRAY F. MILNE, of counsel,) for appellant.

PEACOCK & PEACOCK, of Morris, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This appeal comes here from an order of the circuit court of Grundy County, wherein it was held that the Department of Public Welfare could not hold the estate of an incompetent liable, under the provisions of the Mental Health Code, for charges for care accumulated from the effective date of the act to the first date of billing. The revenue of the State being directly involved the cause is properly brought to this court.

It appears that on April 15, 1957, the Department of Revenue of the State of Illinois filed a petition in the county court of Grundy County praying that Leo A'Hern, the conservator of the estate of Lila A'Hern, be ordered to pay to the department the sum of $3,720, being the sum of accrued *per capita* charges for the care of Lila A'Hern in the Kankakee State Hospital from January 1, 1952, to and including February 28, 1957, and that the conservator be authorized and directed to pay to the department the monthly *per capita* charge thereafter. Attached thereto was a monthly statement of the claim. The conservator filed an answer denying liability and praying that the petition be dismissed.

The cause came on for hearing upon stipulation of facts: Lila A'Hern, an incompetent person, was committed to the Kankakee State Hospital on August 28, 1939, and remained there continuously to the time of hearing. At the time of her confinement until September 26, 1956, she had no assets or property, but on the latter date her conservator received $14,539.80 from the estate of her sister. Lila A'Hern never married, has no children and her parents were deceased prior to her confinement. After the Department was advised of the assets received by the conservator on September 26, 1956, the Department did on November 19, 1956, render a statement of sums due as maintenance charges against the conservator retroactive to January 1,

1952. The conservator received monthly statements after November 16, 1956. The maximum maintenance charges computed as the average *per capita* cost of operation of the State hospitals pursuant to the provisions of the Mental Health Code has continuously been determined to be $60 since the effective date of the Code, January 1, 1952.

It was ordered and decreed by the county court of Grundy County, pursuant to hearing, that the conservator pay the accrued *per capita* charges in the sum of $3,720 to the Department, and the conservator was authorized and directed to pay the Department the monthly *per capita* charge as determined each and every month thereafter.

The conservator appealed from the order of the county court to the circuit court of Grundy County. On the same stipulation of facts, and after hearing in that court, the circuit court entered an order that the claim of the Department for maintenance charges from January 1, 1952, to September 26, 1956, in the sum of $3,412, was null and void and without force and effect, but directed the conservator to pay $308, being the balance of the claim of $3,720, for the period of September 26, 1956, to March 1, 1957. It was the opinion of the circuit court that a retroactive charge could not be made covering a period prior to the receipt of the assets of the estate.

The conservator contends that there is no liability under the act until a charge is made, and that there is no liability under the law against any patient or responsible person if they are unable to pay the maintenance charges.

The Department insists that billings are not necessary to create a liability upon the patient or his estate, but that the liability arises by operation of the law. It is provided by section 9—19 of the Mental Health Code, (Ill. Rev. Stat. 1957, chap. 91½, par. 9—19, that "Each patient in a State hospital and the estate of each patient is liable for the payment of sums representing maintenance charges for the care, treatment, detention and training of such patients

in a State hospital, at a rate to be determined by the Department in accordance with the provisions of Section 9—20 of this Act. If a patient is unable to pay, or if the estate of a patient is insufficient, the spouse of such patient, then the parent or parents, child or children of such patient is liable for the payment of such sums, or for the balance due in case less than the amount prescribed under this Act has been paid, * * *."

Section 9—20 of the act (Ill. Rev. Stat. 1957, chap. 91½, par. 9—20) states "The rate at which the sums for the care, treatment, detention and training of patients in the State hospitals shall be calculated by the Department is the average per capita cost of the care, treatment, detention and training of all such patients, such cost to be computed by the Department on the general average per capita cost of operation of all State hospitals for the mentally ill and the mentally deficient for the fiscal year immediately preceding the period of State care for which the rate is being calculated; * * *. Less amounts may be accepted by the Department when conditions warrant such action or when offered by persons not liable under this Act. Three-fourths of the amounts so received shall be deposited with the State Treasurer and placed in the Mental Health Fund."

Section 9—21 of the act (Ill. Rev. Stat. 1957, chap. 91½, par. 9—21) provides in part that "The Department is authorized to investigate the financial condition of each person liable under this Act, and is further authorized to make determinations of the ability of each such person to pay sums representing maintenance charges, and for such purposes to set a standard as a basis of judgment of ability to pay, which standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors, and to make provisions for unusual and exceptional circumstances in the application of such standard."

It is thus obvious from the statute that liability of the patient, his estate, or the specified responsible person exists at all times, either from the effective date of the act or from the admission of the patient, whichever occurs later. The Department is charged with the responsibility of determining the rate of costs for average *per capita* care, treatment, detention and training of patients. In addition the Department is charged with the responsibility to charge the person liable only in accordance with his ability to pay.

The principle of making retroactive charges for the furnishing of such care by a public body is not new, but is a common-law remedy. (*Dandurand* v. *County of Kankakee,* 196 Ill. 537; *Grames* v. *Norris,* 3 Ill.2d 112.) No provision of the Mental Health Code provides that such services are gratuitous where an ability to pay appears, and no officer can form such a gratuitous intention.

We determined in *Kough* v. *Hoehler,* 413 Ill. 409, that since the charges for the services partake of a public charity, the original cost of which is borne by the public, it is proper that the patients, their estates and relatives, in so far as they are able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public.

The conservator insists, however, that there could be no retroactive liability created by the Department, as it was stated by this court in the case of *Kough* v. *Hoehler,* 413 Ill. 409, 419, that "There is no indebtedness created until the charge is fixed, and the statute itself provides the method of fixing the charges, the amount of which varies according to the conditions set forth in the statute." That statement by the court is not at variance with the claim of the Department in this case. Here the indebtedness for the care, treatment and maintenance of Lila A'Hern had existed since January 1, 1952, pursuant to the charge duly fixed by the Department. The indebtedness, however, was

not collectible until the estate of the incompetent received the assets in question in September, 1956, and thereafter a total definite charge was first made and claimed in November, 1956, when the ability of her estate to pay was determined. Nothing in the language of *Kough* v. *Hoehler* precludes the indebtedness first fixed or the charge first made from including all or any part of the accumulated liability for past services.

The case of *Kough* v. *Hoehler*, 413 Ill. 409, determined that the provisions of the Mental Health Code in providing for a charge for care and treatment of incompetent persons, and for modification of charges in accordance with ability to pay are entirely constitutional, and do not constitute the releasing or extinguishing of debts or obligations due the State.

Section 9—25 of the Code (Ill. Rev. Stat. 1957, chap. 91½, par. 9—25) does provide that "In case any patient, the estate of any patient, and the spouse, parent or parents, child or children of such patient who are liable under this Act shall be unable to pay the sums representing maintenance charges for the patient while in a State hospital, then the care, treatment, detention and training of such patient shall be borne by the State, but the cost of clothing, transportation and other incidental expenses not constituting any part of the care, treatment, detention and training shall be defrayed at the expense of the patient, or the estate of such patient, or the spouse, parent or parents, child of children of such patient, or of the county of his residence, * * *."

The provisions of that section do recognize that the patient, his estate, or his spouse, parents, or children are liable under the act for the patient's care and treatment, even though it is provided that the State shall bear the care, treatment, detention and training where those liable are unable to pay. Nothing contained within that section extinguishes that liability, or limits the State's right and duty to claim and collect that cost, should any liable person or

estate acquire the ability to pay in whole or in part. The section merely is consonant with the charitable aspects of this service, without negating or destroying the common-law right of the public body to make claim for such services to the incompetent.

The order of the circuit court of Grundy County, in so far as it declares the claim of the Department of Public Welfare to be null and void, is reversed and the cause is remanded to said court for the entry of an order consistent with the views of this opinion.

*Reversed and remanded, with directions.*