(No. 36140.—

THE DEPARTMENT OF PUBLIC WELFARE, Appellant, *vs.* CURTIS E. BOHLEBER, Admr., Appellee.

*Opinion filed March 29, 1961.*

WILLIAM L. GUILD, Attorney General, of Springfield, MADALYN MAXWELL, Assistant Attorney General, of counsel,) for appellant.

CONGER & ELLIOTT, of Carmi, for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

This cause originated in the county court of White County when the Department of Public Welfare, proceeding under authority of article IX of the Mental Health Code (Ill. Rev. Stat. 1959, chap. 91½, pars. 9—1 *et seq.*) filed a claim of $5,750.10 in the estate of Clara M. Hughey, deceased, for the cost of decedent's maintenance as a patient in the Anna State Hospital from January 1, 1952, to the date of her death in May, 1959. The administrator filed objections, the Department filed an answer, supported by exhibits, and requested affirmative relief. After a hearing, the county court denied the claim in its entirety. The Department has prosecuted a direct appeal to this court since the State is an interested party and its financial interests are involved. *Department of · Public Welfare* v. *A'Hern,* 14 Ill.2d 575.

Before stating the facts, some consideration of pertinent provisions of the Mental Health Code, which was adopted with effect from January 1, 1952, (Laws of 1951, p. 1585,) will be beneficial to an understanding of the issues involved and the background in which they arise. Section 9—19, with exceptions not applicable here, provides that each patient in a State hospital, and the estate of such patient, is liable for sums representing charges for maintenance, care, etc. at a rate to be determined by the Department of Public Welfare in accordance with the provisions of section 9—20. Further, section 9—19 provides that if the patient is unable to pay, the spouse of such patient, then the parent or parents, child or children of the patient shall be liable. (Ill. Rev. Stat. 1959, chap. 91½, par. 9—19.) Section 9—20, in turn, directs that the rate at which such charges shall be calculated by the Department "is the average per capita cost of the care, treatment, detention and training of all such patients, such cost to be computed by the Department on the general average per capita

cost of operation of all State hospitals for the mentally ill and the mentally deficient for the fiscal year immediately preceding the period of State care for which the rate is being calculated, except that the Department may, in its discretion, set the rate at a lesser amount than such average per capita cost." Ill. Rev. Stat. 1959, chap. 91½, par. 9—20.

Under the terms of section 9—21, the Department is authorized to investigate the financial condition of each person liable under the act, to make determinations of the ability of such persons to pay the maintenance charges, and to set a standard as a basis of judgment of ability to pay. In addition, the same section provides the Department "may issue" to any person liable under the act, statements of sums due, requiring them to pay monthly, quarterly, or as otherwise arranged. In connection therewith, section 9—22 provides that any person who has been issued a statement for sums due as maintenance charges, "may petition" the Department for a release or modification, that the Department shall provide a hearing, and may, in its discretion cancel or modify the statement. By a general provision found in section 11—1 of the Code, it is provided that final administrative decisions of the Department shall be subject to judicial review under the Administrative Review Act. (Ill. Rev. Stat. 1959, chap. 91½, par. 11—1.) Section 9—23 provides that, at the instance of the Department, suits may be filed for the recovery of maintenance charges due the State.

The last provision of importance here, section 9—24, provides as follows: "Upon the death of a person who is or has been a patient of a State hospital, who is liable for maintenance charges and who is possessed of property, it shall be the duty of the executor or administrator to ascertain from the Department whether any payments were made for the sums due as maintenance charges by the deceased person while a patient, and if not, the Department

may present a claim for such sums, *or for the balance due in case less than the rate prescribed under this Act has been paid.* Such claim shall be allowed and paid as other lawful claims against the estate." (Emphasis supplied.)

The deceased in this case, Clara M. Hughey, was committed to the State Hospital prior to January 1, 1952, the effective date of the Code. In May, 1952, the Department mailed to the patient's husband and conservator, Kirk M. Hughey, a questionnaire seeking financial information upon which to base a determination of the ability of the patient and responsible relatives to pay the cost of patient's care. Under date of May 21, 1952, Hughey signed and returned the questionnaire naming himself as the only person responsible for the patient. The information stated his age to be 75, and that the patient's estate consisted of $6000 in United States bonds, income of $2.40 a month from interest, and a savings account of about $330. As to himself, Hughey stated that he was unemployed, that his monthly income was $10 as conservator of his wife's estate, that he had no pension and that his monthly living expenses were about $88. He further stated he was dependent on his wife's assets for support and that he believed he was unable to pay any monthly amount for her care.

On the basis of this information, and under departmental schedules for determining ability to pay maintenance charges on the basis of family gross income, number of dependents, etc., the Department determined that the patient's estate, in view of the necessity of providing support for the dependent husband, was insufficient to pay the monthly amount for her maintenance.

Mr. Hughey died in June, 1952, while the patient herself did not die until May, 1959, but it does not appear that the Department made a redetermination of the patient's ability to pay after the death of her husband. In December, 1959, the Department filed its claim for $5750.10 in the

patient's estate and, as we have said, the denial of such claim provoked this appeal.

Although the objections of the administrator in the court below asserted many grounds for the denial of the claim, including an allegation that the law providing for maintenance charges is unconstitutional, the order of the county court provides no clue to the basis for its holding and the administrator pursues but two contentions in this court. First, that the Department ignored the procedural rules prescribed by the legislature for the determination of maintenance charges; second, that the Department failed in the county court to prove the *per capita* maintenance charges which were in effect while Clara M. Hughey was a patient in the hospital.

Drawing largely upon abstract passages from *Kough* v. *Hoehler,* 413 Ill. 409, *Department of Public Welfare* v. *A'Hern,* 14 Ill.2d 575, and *Department of Public Welfare* v. *Haas,* 15 Ill.2d 204, none of which are applicable on their facts, the administrator argues that before a claim for maintenance charges may be filed against a deceased patient's estate, such charges must be fixed by an administrative determination following which the administrator may have an administrative hearing and judicial review if he so elects. Such a contention, the answer to which must be found in the terms of the statute, is arrived at by unduly confusing the provisions concerning rate and liability with those having to do with ability to pay, and by ignoring completely the legislative direction in section 9—24 as to the extent of the claim the Department is authorized to file against a deceased patient's estate.

Taking the pertinent provisions of the statute in sequence, section 9—19 provides unequivocally that the patient is liable for maintenance charges "at a rate to be determined by the Department in accordance with the provisions of section 9—20 of this Act." The latter section,

in turn, establishes that the rate, which shall be calculated by the Department, shall be the average *per capita* cost of the operation of all State hospitals for the mentally ill, or at a rate lesser than the *per capita* average which the Department is given discretion to set. The rate so calculated or set is thus the rate for which the patient is liable, and is the rate to which section 9—24 has reference when it says the Department may present a claim against a deceased patient's estate for the sum due as maintenance charges, *"or for the balance due in case less than the rate prescribed under this Act has been paid."* (Emphasis supplied.) When sections 9—21 and 9—22 were reached, the legislature was not concerned with rates for maintenance, but with the present ability of those charged with liability under the act to pay the sums accrued or accruing under the rates already prescribed. Section 9—21 does not give the Department authority to compute new rates, as the administrator's argument assumes, but provides only that the Department shall recompute periodically the standard from which ability to pay is determined. And neither does a determination of ability to pay unalterably fix the extent of a patient's liability for maintenance charges. As is demonstrated in *Department of Public Welfare* v. *A'Hern,* 14 Ill.2d 575, there is nothing in section 9—21, or in section 9—25, (which provides that costs will be borne by the State if there is no one able to pay) which extinguishes the liability fixed by section 9—19, or limits the State's right and duty to claim and collect maintenance costs, should any liable person or estate acquire the ability to pay in whole or in part. This being so, the administrator's contention that there must be an administrative determination of maintenance charges before a claim is filed is without substantial foundation.

Moreover, the contention made is refuted by the language of section 9—24 which provides that the claim filed against a deceased patient's estate may be for sums due as

maintenance charges, "or for the balance due in case less than the rate prescribed under this Act has been paid." The clear import of this language is that, regardless of prior payments, prior ability to pay or an administrative determination thereof, the Department may present a claim for the entire cost of maintenance, or an unpaid balance, at the rate prescribed or set under section 9—20. In the face of such a legislative direction, any administrative determination of the ability to pay, once a patient has become deceased, would be a completely useless action.

Turning to the administrator's remaining contention, *viz.,* that the Department failed to prove the *per capita* maintenance charges that were in effect while Clara M. Hughey was a patient, we find that it, too, is without merit. Department regulations, schedules and an official statement of account, which were before the court both by the pleadings and by judicial notice, (inasmuch as they are in the published reports and public records of the Department of Public Welfare), establish that the maximum monthly charge (*per capita* cost) made for the maintenance of a patient in a State mental hospital from January 1, 1952, to July 1, 1957, was set at $60, (see also: *Department* of *Public Welfare* v. *A'Hern,* 14 Ill.2d 575, at 577,) and from that date to May, 1959, was $81. *Cf. People ex rel. Castle* v. *Wright,* 8 Ill.2d 454, at 462-463; *Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89, at 94.

The order of the county court of White County denying the Department's claim is reversed and the cause is remanded for the entry of an order consistent with the view expressed in this opinion.

*Reversed and remanded, with directions.*