MATTER OF KOWALSKI

In DEPORTATION Proceedings

A-10867062

*Decided by Board January 17, 1963*

Since the alien is not institutionalized at public expense where the maintenance charges have been paid and are currently being paid in the sum demanded, even though the charges have been fixed by appropriate State authorities at a rate less than the rate prescribed under State statute, a charge of deportability under section 241(a)(3) of the Immigration and Nationality Act does not lie. [*Matter of C—R—,* 7 I. & N. Dec. 124, overruled.]

CHARGE:

Order: Act of 1952—Section. 241(a)(3) [8 U.S.C. 1251(a)(3)]—Institutionalized at public expense for mental disease.

The case comes forward on appeal from the order of the special inquiry officer dated August 30, 1962, directing that the respondent be deported to Belgium on the charge contained in the order to show cause.

The record relates to a native and citizen of Belgium, about 27 years old, female, who last entered the United States at the port of New York on May 28, 1960, as a returning resident. She was previously admitted to the United States on March 29, 1958, for permanent residence and thereafter made two trips to Belgium returning from her first trip on March 30, 1959, after an absence of about two months and from her last trip after a stay in Belgium of about seven or eight months. She is married to a permanent lawfully resident alien by whom she has a four-year-old son.

The respondent has been a patient at the Chicago State Hospital since her commitment thereto by the County Court of Cook County, Illinois, on September 26, 1960. Her condition has been diagnosed as schizophrenic reaction, chronic undifferentiated type. The respondent was previously committed to the same institution from August 8, 1960, to August 29, 1960. The statement of a staff member of the hospital, dated September 29, 1960, sets forth that the respondent

159

was a schizophrenic of long standing and that her history disclosed that she had been hospitalized in a mental institution prior to the time she came to the United States. The respondent's hospitalization in a mental institution in Belgium on two occasions prior to her entry into the United States was verified.

The section of law under which deportation of the respondent is sought is section 241(a)(3) of the Immigration and Nationality Act which provides for the deportation of an alien who hereafter, within 5 years after entry, becomes institutionalized at public expense because of mental disease, defect or deficiency, unless the alien can show that such disease, defect or deficiency did not exist prior to his or her admission to the United States. The evidence establishes that the respondent has become institutionalized within 5 years after entry because of a mental disease, defect or deficiency, and it has not been shown that the mental disease, defect or deficiency did not exist prior to her admission to the United States. The only issue remaining is whether the respondent was institutionalized at public expense within the meaning of the act.

The special inquiry officer, by order dated March 31, 1961, after a hearing at which the husband had testified that he had paid nothing on his wife's bill, that he did not want his wife back and that because of all of his other expenses he was unable to pay for her hospitalization, ordered deportation on the charge stated in the order to show cause. On appeal, by order dated June 23, 1961, we remanded the case for the purpose of including in the record evidence showing the husband's legal liability for payment of hospitalization and treatment in the Chicago State Hospital and the final results of an action for recovery of the respondent's monthly maintenance charges from the respondent's husband provided in sections 9–19 and 9–23 of the Illinois Mental Health Code and for such other action as might be appropriate.

At the reopened hearing evidence was presented showing that the husband had been informed by the Department of Welfare as of January 30, 1962, that the monthly rate to him on the basis of his financial situation for the care and maintenance of the respondent was decreased from $36.00 a month to $9.00 a month, that the husband had remitted payment on February 16, 1962 of all charges assessed against him for the care of his wife which brought his account up to current status, that the husband paid $87.00, the amount billed for his wife's care, and has been paying the sum of $9.00 a month as billed for his wife's care and maintenance at the Chicago State Hospital.

The special inquiry officer, after considering various provisions of

the Illinois Mental Health Code and several court decisions,[1] came to the conclusion that inasmuch as the only payments made for the respondent's care and maintenance were her husband's remittances of $9.00 per month which were less than the rate prescribed under section 9-20 of the Illinois Mental Health Code, that the respondent had been institutionalized at public expense. The decision of the special inquiry officer was based upon the precedent decision of *Matter of C—R—*, 7 I. & N. Dec. 124, 126, which was quoted as follows:

The determining factor under section 241(a)(3), *supra*, however, is whether an alien after the enactment of the statute "becomes institutionalized at public expense" because of mental disease, defect or deficiency. Congress in providing this new ground for deportation in the 1952 Act was aware of the fact that in some cases where aliens are institutionalized because of mental deficiency they escape deportation as a public charge by payment of the minimum charge of public institutions which does not represent the full cost to the taxpayer. Under the circumstances, we are of the opinion that the special inquiry officer's conclusion with respect to the respondent's hospitalization is based upon the wrong premise. It is our opinion that the defenses applicable to the "public charge" provision of the 1917 Act have no application to section 241(a)(3), *supra*. In other words, under section 241(a)(3) of the 1952 Act there is no basis for terminating the proceedings as long as the full debt has not been discharged.

The decision in *Matter of C—R—*, *supra*, relied upon the language of Senate Report No. 1515 pursuant to Senate Resolution 137 (81st Congress, 2d Session) at page 390 in which it was the conclusion of the subcommittee that all aliens who become public charges any time after entry from causes not affirmatively shown to have arisen after entry should be subject to deportation; that information available to the subcommittee indicates that in some cases where persons are institutionalized because of mental deficiency they escape deportation as a public charge by payment of the minimum charge of public institutions which does not represent the full cost of the taxpayer. It was therefore recommended that all aliens who become institutionalized because of mental deficiency within five years after entry should also be deportable. The Committee Report is dated April 20, 1950.

It is believed that by relying upon this language contained in the Senate Report No. 1515, the decision in *Matter of C—R—*[2] reached an erroneous conclusion. It is true that the various Senate bills introduced at the first and second sessions of the 82nd Congress (S. 716 introduced January 29, 1951, S. 2055 introduced August 27, 1951 and

---

[1] Sections 9-19, 9-20, 9-21, 9-22, and 9-24 of the Illinois Health Mental Code; *Public Welfare* v. *Bohleber*, 21 Ill. 2d 587, 173 N.E. 2d 457; *Department of Public Welfare* v. *A'Hern*, 14 Ill. 2d 575, 153 N.E. 2d 22. Both of these cases involved claims against the estate of the deceased patients for maintenance charges.

[2] 7 I. & N. Dec. 124.

S. 2550 introduced January 29, 1952) all provided in section 241 (a) (3) for the deportation of an alien who within five years after entry became institutionalized because of mental disease, defect, or deficiency. However, the House Bill, H.R. 5678, introduced October 9, 1951 (82nd Congress, 2d Session) section 241 (a) (3) provided for the deportation of any alien who "hereafter within five years after entry, becomes institutionalized *at public expense* because of mental disease, defect, or deficiency." (Emphasis supplied.) In an analysis of some of the major differences between the McCarran Omnibus Bill (S. 2550) and the Humphrey-Lehman Bill (S. 2842) it was pointed out that section 241 (a) (3) of the McCarran Bill makes deportable aliens who, within five years after entry, become institutionalized because of mental disease, defect or deficiency, though it be a nervous breakdown, whether or not the alien can pay his own way and whether or not the cause existed before entry. The Humphrey-Lehman Bill makes such persons deportable only if they are institutionalized at public expense and if the mental disease, defect or deficiency existed prior to entry. It was pointed out that the Humphrey-Lehman Bill follows the present law.[3]

The bill, as it was finally enacted on June 27, 1952, provides in section 241 (a) (3), 8 U.S.C. 1251 (a) (3), for the deportation of any alien who hereafter, within five years after entry, becomes institutionalized at public expense because of mental disease, defect or deficiency, unless the alien can show that such disease, defect, or deficiency did not exist prior to his admission to the United States. The final draft of the bill appears to have evolved as a floor amendment and the only comment relative thereto is to the effect that in conforming the language of both House and Senate versions, the conferees have provided for a statute of limitations (as contained in the House version) in accord with humanitarian principles, particularly in the cases of aliens where deportation would be based on mental disease or on economic distress.[4]

It can be seen that the bill as finally enacted differed widely from the original draft which was the result of the recommendations contained in House Report No. 1515 (81st Congress, 2d Session), page 390. Not only was a five-year statute of limitations provided for, but provision was also made that if the alien became institutionalized at public expense and if it was shown that the mental disease, defect or deficiency did not exist prior to his admission, the ground of deportability would fail. Thus, the legislation as finally enacted resembled closely the public charge provisions of the Immigration Act of Febru-

---

[3] 98 Congressional Record 5799.

[4] House Report No. 2096 (82nd Cong., 2d Sess.), p. 127; 98 Congressional Record 7017 (June 11, 1952).

ary 5, 1917. Therefore, the comments in the Report on the Committee on the Judiciary pursuant to Senate Resolution 137 [5] with its recommendation that all aliens who become institutionalized because of mental deficiency within five years of entry should be deportable was never enacted into law, but the less stringent provisions of the Humphrey-Lehman Bill was enacted into section 241 (a) (3) which followed the then existing law.[6]

The law that then existed is set forth in *Matter of B—*, 3 I. & N. Dec. 323 (A.G., October 28, 1948). In that case the respondent first entered the United States in 1920, and last entered on July 22, 1939, after a visit to Ireland. Early in 1940 she was sent to the Cook County Psychopathic Hospital for observation and in March she was ordered committed to the Manteno State Hospital by the County Court of Cook County, Illinois. Her condition was diagnosed as psychoneurosis, reactive depression, and at the time of the hearing she was still a mental patient at that institution. Her sister provided money for the purchase of respondent's clothes and for other incidentals. The Illinois statute provided that the respondent was entitled to receive free maintenance, care and treatment while a patient at the Mantena State Hospital and she was only liable for her clothing, transportation and other incidental expenses which were discharged by her sister. The Board, citing the cases of *Nocchi v. Johnson*, 6 F.2d 1 (1st Cir., 1925) and *Ex parte Kichmiriantz*, 283 F. 697 (N.D. Cal. 1922), evolved the following rule: (1) the State or other governing body must, by appropriate law, impose a charge for the services rendered to the alien; in other words, the State must have a cause of action in contract against either the person taking advantage of the State's services or other designated relatives or friends; if no charge is made and if the State does not have a cause of action, the alien cannot be said to be a public charge; (2) the authorities must make a demand for payment of the charge upon those persons made liable under the State law except where the patient and persons legally responsible for its care and maintenance are known to be destitute; and (3) there must be a failure to pay for the charges; if there is a failure to pay either because of the lack of demand or because the State authorities do not perform their duty to collect the charges, the alien cannot be said to have become a public charge. A minority of the Board dissented from this view but the Attorney General sustained the majority opinion.

In the present case, the State has fixed a charge having in mind the ability of the respondent or her legally liable husband, to pay, and payment has been made of the sum demanded. The fact that the

[5] Senate Report No. 1515 (81st Cong., 2d Sess., 390).

[6] 98 Congressional Record 5797.

State might later have recourse against the estate of the patient or of her husband we believe is not material to the charge laid under section 241(a)(3) of the Immigration and Nationality Act. Inasmuch as the maintenance charges have been paid and are currently being paid, it cannot be said that the respondent is being institutionalized at public expense and the charge must therefore fall. The proceedings will be terminated.

ORDER: It is ordered that the appeal be sustained and that the proceedings be and the same are hereby terminated.