*In re* ESTATE OF EUGENE VANDEVENTER, INCOMPETENT—(THE DEPART-MENT OF MENTAL HEALTH, Claimant-Appellant, *v.* RAYMOND LEHNE, Conservator of the Estate of Eugene Vandeventer, Respondent-Appellee.)

(No. 12118; )

Fourth District—December 20, 1973.

William J. Scott, Attorney General, of Chicago (Ronald W. Olson, Assistant Attorney General, of counsel), for appellant.

McClure, McClure & Brannan, of Beardstown, for appellee.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

■■ The Department of Mental Health filed a claim against the conservator of the estate of Eugene Vandeventer for $20,718 for treatment and care of the incompetent. The trial court disallowed the claim on the grounds that it was barred by laches. We reverse.

The incompetent in this case was declared legally insane on November 29, 1930, and was placed in Jacksonville State Hospital where he remained until June 30, 1971. At that time he was released and relocated in a shelter care home for the aged. In 1969 letters of conservatorship

were issued to defendant conservator. In 1972 the Department filed the claim based upon Ill. Rev. Stat. 1971, ch. 91½, par. 12—12, which provides in relevant part: "Each patient receiving treatment in a mental health program of the Department, and the estate of such patient, is liable for the payment of sums representing charges for treatment of such patient at a rate to be determined by the Department * * *. If such patient is unable to pay or if the estate of such patient is insufficient, the responsible relatives are severally liable for the payment of such sums * * *." The statute further provides that no responsible relatives shall be held liable for charges assessed more than 5 years prior to the time the action to recover from them is filed, but that such 5 year limitation does not apply to the liability of a patient or a patient's estate.

In our judgment, the opinion of this court in *In re Estate of Grimsley,* 7 Ill.App.3d 563, 288 N.E.2d 66, and the cases therein cited control the disposition of this case and serves as a necessary springboard in reviewing the judgment of the trial court. The conservator, however, argues that *Grimsley* is not controlling under the Illinois Constitution, article XIII, section 4 (1970), wherein it is provided that "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." The appellee-conservator contends that the refusal to consider laches as an affirmative defense to an action by the State brought in its governmental capacity is a derivative of the ancient doctrine of sovereign immunity: the King can do no wrong. Thus he argues that since that doctrine has been interred by the Constitution, all of its kith and kin whether legitimate or illegitimate off-springs of that doctrine are likewise abolished. The conservator argues and produces an armada of law review articles maligning the chastity of the doctrine and its off-spring. The difficulty with such argument is that the doctrine of sovereign immunity is not alone the rationale of denying laches as a bar to an action by the State. More important is the public policy involved and the possibility that application of laches or estoppel doctrines may impair the functioning of the State in the discharge of its governmental functions and that valuable public interest may be jeopardized or lost by the negligence in the State or inattention of public officials. (*Hickey v. Illinois Central R.R. Co.,* 35 Ill.2d 427, 220 N.E.2d 415.) In our case, we have only inaction on the part of State officials. In *Hickey,* affirmative action on the part of state government disclaiming all interest in certain property affirmatively contributed to the result. This same observation was noted in *City of Quincy v. Sturhahn,* 18 Ill.2d 604, 165 N.E.2d 271. As we have observed, the legislature itself fixes no statutes of limitations for a claim against the estate of an incompetent—it does fix a statute of limitations for recovery against responsible relatives. Likewise there

was no affirmative action on the part of the State in this case which would make a recovery unconscionable or inequitable.

■■■ The conservator's argument carried to its ultimate end would require us to hold that there is no basis to differentiate between the State and other litigants *in toto*. It would, we submit, require the abolition of of the Illinois Court of Claims providing for a separate forum for claims against the State. The constitutional interrment of sovereign immunity in our judgment is limited to the question of state liability and does not affect previously existing statutory or procedural rights nor causes of action heretofore exercised by the State. The liability here sought to be imposed upon the incompetent's estate arises by operation of law. (*Department of Public Welfare v. A'Hern*, 14 Ill.2d 575, 153 N.E.2d 22.) The doctrine of laches does not apply to the exercise of governmental functions. (*Shoreline Builders Co. v. City of Park Ridge*, 60 Ill.App.2d 282, 209 N.E.2d 878.) In passing we would observe that the financial interest of the State of Illinois is directly involved in this claim. To require this estate to pay the State of Illinois for the cost of benefits received by this incompetent over a period of years at this time requires it to pay now what it should have paid in the past. (*Department of Public Welfare v. Bohleber*, 21 Ill.2d 587, 173 N.E.2d 457.) Neither the estate of the incompetent nor his ultimate heirs are deprived of that which equitably belongs to them rather than to the People of the State generally.

Accordingly the judgment of the trial court is reversed and the cause is remanded with directions to allow the claim *in toto*.

Reversed and remanded.

CRAVEN and KASSERMAN, JJ., concur.