VICTOR STURM *et al.*, Plaintiffs-Appellants, *v.* JOHN R. BLOCK, Director, Department of Agriculture, *et al.*, Defendants-Appellees.

Third District   No. 78-323

Opinion filed May 16, 1979.—Rehearing denied July 3, 1979.

Roger V. Pierson and Matthew A. Maloney, both of Princeton, for appellants.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellee John R. Block.

Wilfred Rice, Jr., and Gary W. Reid, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee Illinois Hooved Animal Humane Society, Inc.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Victor and Margot Sturm appeal from the order of the circuit court which dismissed their complaint against defendants John Block, the Illinois Hooved Animal Humane Society, Inc. (hereinafter referred to as the "Humane Society"), and Ruth McDonald and Avis Zurliene, agents of the Humane Society. The Sturms had filed suit seeking, in pertinent part, declaratory relief with respect to certain portions of the Humane Care for Animals Act (Ill. Rev. Stat. 1977, ch. 8, pars. 701-716) (hereinafter referred to as the Act) and to certain actions taken by the named defendants in the enforcement of the Act. The other counts of the complaint sought relief by way of damages for conversion and wanton and reckless conduct on the part of defendants McDonald and Zurliene and the Humane Society. No issue is raised on the appeal concerning those counts of the complaint. On motions by the defendants, the trial court dismissed the complaint for declaratory relief, basing that dismissal upon the failure of the Sturms to pursue allegedly available remedies under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264-279) (hereinafter referred to as Review Act). On this appeal, the Sturms urge as error the dismissal of their complaint, and they raise various issues with respect to the availability of declaratory relief, under the circumstances herein, and the applicability of the Review Act. Also raised is an issue as to the immunity of the defendants, as agents of the State of Illinois, from the instant suit, which immunity was partially relied upon by the trial court in its conclusion that it lacked jurisdiction over the declaratory action.

■■ Where an appellate court reviews the granting of a motion to dismiss, it is an elementary proposition that all well and properly pleaded facts are to be taken as true. (*Kendall v. Kendall* (1978), 71 Ill. 2d 374, 375 N.E.2d 1280.) The facts, as gleaned from the pleadings and other supporting material in the meager record on appeal, indicate that in 1977 the Sturms owned six registered, purebred Arabian horses. In 1977, the Humane Society began an investigation into the care and treatment being afforded the animals by the Sturms. (See Ill. Rev. Stat. 1977, ch. 8, pars. 708-710.) As a result of the investigation, conducted by approved humane investigators as agents for the Humane Society and the State of Illinois, the investigators determined that violations of the Act were present in the manner in which the Sturms cared for their animals. Pursuant to the Act's provisions, notices of violation were sent to the Sturms in October 1977, and again in January 1978. (See Ill. Rev. Stat. 1977, ch. 8, par. 711.) The

notices in each case cited violations of section 3(a) and (d) of the Act (Ill. Rev. Stat. 1977, ch. 8, par. 703(a), (d)). In pertinent part, that section provides:

"Each owner shall provide for each of his animals:
(a) sufficient quantity of good quality, wholesome food and water;
　　　　　* * * and
(d) humane care and treatment."

The notices gave the Sturms 48 hours to correct the violations, warning them that failure to take corrective action could result in criminal penalties and fines, as well as in the impoundment of the animals, an assertion of a lien for the costs of impoundment, and a possible sale of the animals to satisfy the lien. While the notice of January 17, 1978, is more relevant to the issues on this appeal, that notice is not in the record. The notice of October 26, 1977, present in the record by way of supplement, informed the Sturms that the violations then present could be corrected with the "separate individual feeding of quality hay and grain as advised by [their] veterinarian." In their briefs to this court and to the circuit court, the Humane Society argued that the violations by the Sturms resulted from the horses being confined to stalls, allowed to stand in liquid manure, and, at times, being without food and water.

On January 20, 1978, three days after the January 17 notice of violation, the Humane Society, in the persons of Ruth McDonald and Avis Zurliene acting as approved animal investigators under the Act, impounded the six horses while they were lodged at the Bureau County Fair Grounds. In their briefs, defense counsel state that the impoundment was carried out only after the animals had been examined by a veterinarian and after authorization from the Department of Agriculture was secured. They also allege that a copy of the impoundment order was immediately forwarded to the Department. (See Ill. Rev. Stat. 1977, ch. 8, par. 712.) The notice of impoundment found in the record is addressed to the Sturms, dated January 20, 1978, and it states that the horses are being impounded by the Humane Society, pursuant to warnings given October 12, 1977, and January 17, 1978, and after examination by a Department veterinarian. The notice then recites the authority for the impoundment, being the Act (Ill. Rev. Stat. 1977, ch. 8, pars. 701-716), and it states that a lien for the costs of impoundment must be paid before the animals will be released and that the animals may be sold within seven days, if an owner does not claim them and satisfy all impoundment costs. The final sentence of the notice states:

"This notice shall be considered full and sufficient, and no further communication from the Humane Society shall be necessary."

It is signed by McDonald and Zurliene and by a representative of the

Department of Agriculture. Also appearing in the record, again by way of supplement, is a copy of an emergency notice of violation, dated January 20, 1978, which states that the Sturms are in violation of section 3(a), (d) of the Act and that the animals are:

> "* * * in such a deplorable state and condition that immediate action is essential. The subject animal(s) is (are) therefore impounded pursuant to the NOTICE OF IMPOUNDMENT accompanying this EMERGENCY NOTICE OF VIO-LATION."

This notice, and, apparently, the notice of impoundment, were received by the Sturms on January 23, 1978. In their complaint, the Sturms allege that they made a demand for the return of the horses, or, alternatively, disclosure of their whereabouts, but that the defendants failed and refused to make such return or disclosure.

So far as the record indicates, the next action taken after the impoundment was the filing of a criminal complaint against the Sturms, alleging a violation of section 3(a) of the Act on the date of January 20, 1978, at the Bureau County Fairgrounds. Section 16 of the Act makes a violation of the Act's provisions a criminal offense. The record in the criminal action is before us as the supplemental record in the instant case. The judgment and decision in the criminal matter, dismissing the complaint and finding section 3(a) of the Act unconstitutional, are not before us on this appeal. The record in that cause, containing as it does material pertinent to the issues and circumstances of the instant case, is present, without objection, as a supplemental record in the instant case. The criminal complaint was filed on February 2, 1978, in the Bureau County Circuit Court.

On February 6, 1978, the Sturms filed the instant action in response to the seizure and impoundment of their horses by the Humane Society. Count I of the complaint, the only count with which this appeal is concerned, sought a declaratory judgment finding section 3(d) of the Act unconstitutional, finding that John Block had improperly delegated authority without adequate standards and guidelines, and finding that the horses were wrongfully seized. The Sturms also sought such other relief as the court might deem proper. The defendants answered, alleging the immunity of the State from suit, except in the Court of Claims. All parties defendant then filed motions to dismiss, alleging a lack of jurisdiction in the circuit court, premised upon both immunity and the failure of the plaintiffs to pursue allegedly applicable provisions for review in the Administrative Review Act. The circuit court granted the motions to dismiss, principally basing its decision upon the failure of the Sturms to pursue review remedies set forth in the Administrative Review Act. The

opinion-order also concludes that it was improper to sue the defendants in the circuit court, apparently agreeing with the defendants' immunity arguments as well.

We turn first to the court's finding that the declaratory action should be dismissed for the Sturms' failure to pursue review pursuant to the Administrative Review Act. Section 14 of the Humane Care for Animals Act provides for judicial review of "final administrative decision of the Department" pursuant to provisions of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 8, par. 714):

> "The 'Administrative Review Act', approved May 8, 1945, and all amendments and modifications thereof, and the rules adopted pursuant thereof, apply to and govern all proceedings for the judicial review of final administrative decisions of the Department hereunder. The term 'administrative decision' is defined in Section 1 of the 'Administrative Review Act'."

Section 1 of the Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264) defines the term "administrative decision" as follows:

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency."

The first question to be addressed is whether the notice of impoundment, which carries impoundment authorization by the Department, was an "administrative decision" reviewable under the Administrative Review Act. The trial court determined that it was and the State, in its brief to this court, argues that that decision was correct. However, an examination of the whole of the Administrative Review Act and of decisions thereunder leads us to the opposite conclusion, that the notice of impoundment was not a final decision reviewable under the Administrative Review Act.

■■ The State argues that the notice of impoundment in this case was an "administrative decision," as defined in section 1 quoted above, since it affected the legal rights of the Sturms and since no further action by the Department is authorized or provided for in the Act. There are two problems with this position. The first problem with this analysis and with the decision in the present case is that, so far as the record shows, there has been no proceeding before an administrative agency. The Sturms received notices in October 1977 and in January 1978, and their horses were impounded on January 20, 1978, on the basis of conclusions by two investigators of the Humane Society and the authorization of impoundment by the Department of Agriculture. So far as the record shows, the Sturms have never been a party to any administrative proceeding; there was no proceeding in which to contest the factual

conclusions contained in the notices of violation and the impoundment notice. There has been no hearing; there has been no evidence presented; there have been no findings made by the agency; there has been no record established. As noted by the court in *Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli* (1st Dist. 1977), 49 Ill. App. 3d 896, 900, 364 N.E.2d 449:

> "The words in Administrative Review Act 'for review of decisions which terminate proceedings' contemplate an administrative process which presents an issue for hearing and disposition by an impartial trial agency."

As noted above, there was no such proceeding in the present case. That the *Fornelli* court's conclusion on the meaning of "administrative decision" in section 1 of the Review Act is correct can be seen from a review of the provisions of the Review Act. Section 1, quoted above, speaks in terms of an order of an agency "in a particular case" which terminates "the proceedings" before the agency. Section 5, containing the venue provisions of the Review Act, allows commencement of an action for review in the circuit court of any county in which "(1) any part of the hearing or proceeding culminating in the decision of the administrative agency was held, * * *." (Ill. Rev. Stat. 1977, ch. 110, par. 268.)

Section 8 of the Review Act provides that "[i]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." (Ill. Rev. Stat. 1977, ch. 110, par. 271.) Section 9 deals with the pleadings and the record on review and it provides that "the administrative agency shall file an answer which shall consist of the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decisions made by it." (Ill. Rev. Stat. 1977, ch. 110, par. 272.) In addition, the circuit court, sitting as a court of review, is not permitted to hear new or additional evidence, and the findings and conclusions of the agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) What this recitation of these sections demonstrates is that the Review Act contemplates some sort of adversarial proceeding, involving the parties affected, out of which will come a decision by an agency and a record upon which the decision was based. As stated in *Fornelli*, section 1's definition of "administrative decision" contemplates "an administrative process which presents an issue for hearing and disposition by an impartial trial agency." (49 Ill. App. 3d 896, 900.) It is such a decision, usually containing findings of fact by the agency, along with the record before the agency, that is before the circuit court when it sits in judicial review of administrative actions.

■ It is interesting to note what the circuit court would have had before it, sitting in review of this "decision" to impound. The record on such a review would have apparently consisted of the two notices of violation sent to the Sturms and the notice of impoundment. Such a "record" would have afforded the court no basis at all upon which to make any determination as to the investigators' decision to impound the Sturms' horses. We conclude that the notice of impoundment was not a final decision of the administrative agency within the meaning of section 1 of the Administrative Review Act and that no review under that Act was available to the Sturms to challenge the agency action in impounding their animals. The record at this time simply shows an *ex parte* decision by the animal investigators, concurred in by the Department, that the animals were in such a state that impoundment was necessary. If more "proceedings" than that were involved prior to impoundment, they have not been set forth in the record, and it was the burden of the defense to do so since they asserted the decision was reviewable under the Administrative Review Act.

The second problem with the defense contention that the decision in the instant case was reviewable under the Review Act lies in the State's assertion in their brief that the authorization to impound was a final administrative decision and that no further review was available under the Act. While the Act itself authorizes no further action by the agency, it does empower the Department of Agriculture to promulgate rules and regulations necessary to effectuate the purposes of the Humane Care for Animals Act. (Ill. Rev. Stat. 1977, ch. 8, par. 708.) Pursuant to section 8 and the Administrative Procedures Act (Ill. Rev. Stat. 1977, ch. 127, par. 1004(a)(1), the Department has promulgated rules and regulations governing administrative actions taken under authority of the Humane Care for Animals Act. Although these rules and regulations were not presented to the trial court, it is well established that a court may properly take judicial notice of administrative rules and regulations. (*Davis v. Marathon Oil Co.* (4th Dist. 1975), 28 Ill. App. 3d 526, 534, 330 N.E.2d 312; Ill. Rev. Stat. 1977, ch. 110A, par. 366; Ill. Rev. Stat. 1977, ch. 51, par. 48b; see also *Department of Public Welfare v. Bohleber* (1961), 21 Ill. 2d 587, 173 N.E.2d 457.) From an examination of those regulations and rules it appears that, contrary to assertions by the State in its brief, there is an internal administrative review procedure established which would cover the agency action in this case.

Article IV of the Rules and Regulations Relating to the Administrative Procedure Act, effective January 15, 1978, promulgated by the Department of Agriculture, governs practices and procedures applicable to rule making and to other formal administrative hearings

conducted by the Department. Regulations III and VI, and the rules thereunder, provide for administrative review by the Director of certain administrative actions. From our reading of the applicable rules, it appears that this review procedure would encompass the action taken in the instant case to impound the horses. (See Regulation II, Rule 4.2.1(a), (c), (k), (1); Regulation II, Rule 4.3.1(a).) Review may be obtained by an interested person petitioning the Director to revoke or nullify an order or any other action of the agency. The necessary form of such petition is set forth in the Rules and Regulations, and formal procedures are set forth for the making of the record and for petitioner's opportunity to submit comments and arguments in the administrative proceeding. (Regulation III, Rule 4.3.2; Regulation VI, Rule 4.6.1.) The Director has discretionary power, when reviewing a petition, to proceed in any number of ways. Rule 4.6.13 provides that the Director may utilize any of the following in such review:

"(a) Conferences, meetings and correspondence.

(b) A formal evidentiary public hearing before the Director or his authorized representative.

(c) A public hearing or meeting before a departmental advisory board or committee.

(d) A public hearing before a statutorily established advisory board or committee.

(e) Any other procedure established by the governing statute."

These are rules and regulations which govern such hearings and which set forth the procedures for hearing contested actions. Also, Regulation VII allows a person to petition the Director for a stay of any administrative action for a specific period of time or for an indefinite period. In summary, an examination of the applicable rules and regulations discloses that the authorization for impoundment and the impoundment by the agency was not final administrative action by the Department. Rather, that action was subject to further administrative review procedures within the agency. We do not decide whether the substance of those review procedures, which depend in large part upon the discretion of the Director, complies with due process standards in this particular case. While some question arises as to the constitutional sufficiency of a discretionary hearing in light of the seizure and substantial deprivation of property involved in this case, that question is not before us since the Sturms have failed to pursue their administrative review opportunities under the Department's Rules and Regulations.

We have concluded that the decision in this case was not a final "administrative decision" authorizing *judicial* review under the Administrative Review Act. The trial court's conclusions (1) that it was a

final decision and (2) that the failure of the Sturms to pursue review, under the Review Act, waived their right to review, are clearly erroneous. See *Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25, 230 N.E.2d 831.

That brings us to the next issue to be addressed on this appeal: whether, having failed to exhaust their *administrative* remedies under the Department's rules and regulations, the Sturms are precluded from seeking review in the circuit court by way of declaratory relief. The basic rules with respect to the exhaustion of administrative remedies were stated by the Illinois Supreme Court again in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357-59, 326 N.E.2d 737:

> "Even without statutory guidance, the doctrine of exhaustion has long been a basic principle of administrative law—a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him. (*Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 Ill. 41, 82 L. Ed. 638, 58 S. Ct. 26.) The rule is the counterpart of the procedural rule which, with certain exceptions, precludes appellate review prior to a final judgment in the trial court, and the reasons for its existence are numerous: (1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary. 2 F. Cooper, State Administrative Law 572-574 (1965); L. Jaffe, Judicial Control of Administrative Action 424-426 (1965); 3 K. Davis, Administrative Law Treatise secs. 20.01-20.10 (1958), and 1970 Supplement at 642-669.
>
> All jurisdictions have recognized that the exhaustion doctrine, if strictly applied, could sometimes produce very harsh and inequitable results. While our courts have required comparatively strict compliance with the exhaustion rule, exceptions have been recognized where an ordinance or statute is attacked as unconstitutional in its entirety (*Bright v. City of Evanston* (1956), 10 Ill. 2d 178), or where multiple remedies exist before the same zoning board and at least one has been exhausted (*Herman v. Village of Hillside* (1958), 15 Ill. 2d 396), or where irreparable harm will result from further pursuit of administrative remedies (*Peoples Gas Light and Coke Co. v. Slattery* (1939), 373 Ill. 31). It is not our intention by this opinion to affect these existing exceptions.
>
> These exceptions to the exhaustion doctrine have been fashioned in recognition of the time-honored rule that equitable relief will be available if the remedy at law is inadequate. In those situations covered by these exceptions, further recourse to the administrative

process would not, or cannot, for a variety of reasons, provide adequate relief."

The appellants point to the fact that their declaratory action attacks the constitutionality of section 3(d) of the Act on its face, and as applied, in support of their argument that exhaustion was not required in this case. The rule has been expressed a number of ways, encompassing constitutional attacks upon a statute, ordinance, or rule (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223) where that attack challenges the statute, ordinance or rule, "in its entirety" (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737), "in its terms" (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552, 359 N.E.2d 113), or "on its face." (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.) However expressed, the basic distinction is between constitutional attacks upon a statute, ordinance or rule *as applied* in a particular case and constitutional attacks upon the *facial terms* of statutes, ordinances or rules of administrative agencies, regardless of the particular application involved.

In the present case, the Sturms' complaint did challenge section 3(d) of the Act, on its face and as applied to them in this particular case. On the surface it seems that the requirements permitting an exception to the rule of exhaustion are satisfied. However, it must be emphasized that the principal focus of the exceptions to the doctrine of administrative exhaustion is the question of the adequacy of the remedy provided by further administrative review and action. In the final quoted paragraph from the *Allphin* opinion, the Illinois Supreme Court expressly recognized that and has reaffirmed that conclusion in subsequent cases. (See *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543; *Bio-Medical Laboratories v. Trainor* (1977), 68 Ill. 2d 540, 549.) The *Walker* case dealt with an attack upon the statute creating the Board of Elections. The court found that the plaintiffs were not required to exhaust their administrative remedies since they challenged the jurisdiction of the board and since their available administrative remedy was merely a hearing before that very board. *Walker* involved a challenge to the facial constitutionality of a statute authorizing and providing for creation of the board. *Trainor* also dealt with a situation where the administrative remedy available, in that case a hearing before the Department of Public Aid, was inadequate since any suspension from the medicaid program (the action at issue in that case) would have caused irreparable harm to plaintiffs. (68 Ill. 2d 540, 549.) There the court found that resort to administrative remedies was not required under the exception for facial attacks upon the constitutionality of a statute.

In the present case, while there is an attack upon the facial terms of

section 3(d), as well as an attack upon its application, there is no allegation or suggestion that the administrative remedy available, in this case a petition to the Director of the Department of Agriculture to rescind and revoke the impoundment authorization and a possible public hearing thereon, is, or was, inadequate. Neither is there allegation or suggestion that irreparable harm will result to the Sturms if they are required to first exhaust their administrative remedies provided under the Department's Rules and Regulations. We have discussed the review procedure in a previous portion of this opinion. From our reading of those Rules and Regulations, it appears that the Sturms could have petitioned the Director for a review of the impoundment authorization and could have requested, therein, a formal hearing. (See Rules and Regulations of the Department of Agriculture Relating to the Administrative Procedure Act, Article IV, Regulation II, Rule 4.2.1(a), (c), (k), (1); Regulation III, Rule 4.3.1, effective January 15, 1978.) It also appears that they could have requested a stay of any further action concerning the horses, pending resolution of their petition for review. (See Regulation VII, Rule 4.7.1.) If the Sturms had been unhappy with a determination by the Director in such review proceedings, then they could have filed an action for judicial review under the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 8, par. 714.) In that judicial review action they could have raised their constitutional question as to the validity of section 3(d). As noted in *Head-On Collision Line, Inc. v. Kirk* (1st Dist. 1976), 36 Ill. App. 3d 263, 268, 343 N.E.2d 534:

> "Constitutional questions may be raised for the first time in a complaint for administrative review. [Citation.] Furthermore, plaintiff has the obligation of raising constitutional questions at the earliest opportunity. [Citations.]"

In summary, it appears that the administrative review procedures available to the Sturms under the Department's Rules and Regulations afforded them an adequate remedy within which to challenge the actions complained of herein. Since they have not pursued the administrative remedies available to them, they may not obtain judicial review in the courts in this proceeding. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) The decision of the trial court in dismissing plaintiffs' action was correct since the Sturms had failed to exhaust their administrative remedies prior to seeking judicial review and relief.

We note that our conclusion as to the availability of administrative review within the Department is based solely upon our reading of the applicable provisions of the Rules and Regulations. According to those Rules and Regulations, we discern no set time period within which a person must file his petition for review of an agency action. We make no determination as to whether the Sturms may still file a petition seeking

appropriate administrative review of the agency's action in impounding the horses. In the event that such action is undertaken and an adverse decision to the Sturms is reached, or in the event that the Director determines that such petition is untimely filed, or in the event the Director determines that the rules and regulations providing for review by petition do not apply to the impoundment action in this case, then such decision or decisions can be reviewed in the circuit court pursuant to the Administrative Review Act or other appropriate proceedings.

In the present action, the trial court's action in dismissing the complaint for declaratory relief was proper since the plaintiffs had failed to first exhaust their administrative remedies which were not alleged or shown to be inadequate. Because of our resolution of this issue, we need not consider the issue raised with respect to immunity of the defendants from suit.

The judgment of the Circuit Court of Bureau County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.